23 F.3d 41
 28 Fed.R.Serv.3d 1505
 PRODUCTOS MERCANTILES E INDUSTRIALES, S.A., Appellee,
v.
FABERGE USA, INC., formerly known as Faberge, Incorporated,
Unilever United States, Inc. and Industrias
Unisola, S.A., Appellants.
 No. 1333, Docket 93-9111.
 United States Court of Appeals,
Second Circuit.
 Argued April 6, 1994.
Decided April 18, 1994.
 
 Robert F. D'Emilia, New York City, for appellants.
 Neil E. McDonell, New York City (Donna S. Webber, and Marks & Murase, on the brief), for appellee.
 Before: NEWMAN, Chief Judge, TIMBERS and WALKER, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 Faberge USA, Inc. (Faberge), Industrias Unisola, S.A. (Unisola), and Unilever United States, Inc. (Unilever) appeal from an order entered in the Southern District of New York, Shirley Wohl Kram, District Judge, denying their motions to dismiss an action commenced by appellee Productos Mercantiles E Industriales, S.A. (Prome) and to impose sanctions, and granting Prome's motion for modification and confirmation of an arbitration award. Appellants contend that the court erred in denying their motions and in granting appellee's requested relief.
 
 
 2
 We affirm in part and remand in part.I.
 
 
 3
 We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.
 
 
 4
 Prome is incorporated in Guatemala and has its principal place of business there. Faberge is incorporated in Minnesota and has its principal place of business in New York. Unisola is incorporated in El Salvador and has its principal place of business there. Unilever is incorporated in New York and has its principal place of business there. Unilever N.V. is a Netherlands corporation; it and Unilever PLC, a United Kingdom corporation, own Unilever United States, Inc.
 
 
 5
 In 1971, Prome and Faberge entered into an exclusive licensing agreement, which permitted Prome to use Faberge trademarks on Prome's products manufactured in Central America. On August 3, 1989, either Unilever or Unilever, N.V., "acquired the worldwide business" of Faberge. Thereafter, Faberge's Central American business was assigned to Unisola, a corporation half-owned by Unilever N.V. In September 1989, Prome was informed that the 1971 agreement would not be renewed when it expired in December 1989.
 
 
 6
 In July 1991, Prome filed a claim against Faberge with the American Arbitration Association in New York in connection with disputes arising from the termination of the 1971 agreement. On April 15, 1992, after two hearing dates, Prome sought to add both Unisola and Unilever as parties to the arbitration after Prome allegedly discovered that Faberge was a "judgment proof shell with no assets". Paragraph 17 of the agreement provided that the agreement, including its arbitration provision, "shall be binding upon and inure" to the parties and "their successors and assigns". The arbitrators added Unisola to the arbitration upon Unisola's consent. Unilever did not consent to join the arbitration and was not added to the arbitration. In-house counsel for Unilever, Robert F. D'Emilia, represented Unisola and Faberge throughout the arbitration hearing.
 
 
 7
 On August 4, 1992, the arbitrators rendered their award. In paragraph 1b, the arbitrators awarded Prome $58,949.94 on its principal claim against Faberge. In paragraph 6a, the arbitrators ordered Faberge to pay Prome a total of $70,689.42, that "being the balance due after the necessary offset/credit awarded on [Faberge's] counterclaims". Subsequently, Prome sought modification (1) to correct an apparent typographical error on Prome's principal claim set forth in paragraph 1b and (2) to modify the sum set forth in paragraph 6a in accordance with the paragraph 1b correction. The arbitrators corrected Prome's principal claim award to read $158,949.94, but, without explanation, they did not adjust the sum set forth in paragraph 6a. On August 17, 1992, Unisola paid Prome $70,689.42. Unisola contended that this constituted full payment of the award.
 
 
 8
 In October 1992, Prome petitioned the court for modification of the sum set forth in paragraph 6a to take into account the arbitrators' adjustment to paragraph 1b. Prome claimed that it was owed approximately $80,496.52 after accounting for the counterclaims, the money already paid, and interest. Prome also sought to confirm and enforce the award against Faberge, Unisola, and Unilever, despite the fact that Unilever was never named as a party to the arbitration.
 
 
 9
 Appellants moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(1) on the ground that the court lacked subject matter jurisdiction. Appellants also moved for sanctions pursuant to Fed.R.Civ.P. 11. Unilever unsuccessfully moved pursuant to Rule 12(b)(6) to dismiss for failure to state a claim. The court denied appellants' motions and granted appellee's request to modify the award and to make it enforceable against Unisola and Unilever. This appeal followed.
 
 
 10
 Appellants contend that the court erred in denying their motion to dismiss for lack of subject matter jurisdiction and in granting appellee's motion for modification and confirmation of the arbitration award. Unilever contends that the court erred in denying its motion to dismiss for failure to state a claim. Appellants also contend that the court abused its discretion in denying their motion to impose sanctions.II.
 
 
 11
 (A) SUBJECT MATTER JURISDICTION
 
 
 12
 Appellants contend that the court erred in denying their motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Specifically, appellants contend that the court erred in finding that the Federal Arbitration Act (FAA), 9 U.S.C. Secs. 1-16 (1988 & Supp. IV 1992), in conjunction with the Inter-American Convention on International Commercial Arbitration, done January 30, 1975, O.A.S.T.S. No. 42, reprinted in 9 U.S.C.A. Sec. 301 (Supp.1994) (Inter-American Convention), (1) provided the court with subject matter jurisdiction and (2) authorized the court to modify the arbitration award. These contentions are without merit.
 
 
 13
 (1) Jurisdiction under the Convention
 
 
 14
 Appellants contend that the court did not have subject matter jurisdiction because the arbitration award was rendered in the United States. Appellants cite the Senate's third reservation to the ratification of the Inter-American Convention, which provides that "[t]he United States of America will apply the Convention, on the basis of reciprocity, to the recognition and enforcement of only those awards made in the territory of another Contracting State". 132 Cong.Rec. S15,774 (daily ed. Oct. 9, 1986), reprinted in 9 U.S.C.A. Sec. 301 (Supp.1994). They also cite the implementing legislation to the Inter-American Convention, which provides that "[a]rbitral decisions or awards made in the territory of a foreign State shall, on the basis of reciprocity, be recognized and enforced under this chapter only if that State has ratified or acceded to the Inter-American Convention". 9 U.S.C. Sec. 304 (Supp. IV 1992). Appellants contend that these provisions limit the federal courts' jurisdiction over arbitration awards to awards rendered in foreign countries that are signatories to the Inter-American Convention. We disagree.
 
 
 15
 A plain reading of Sec. 304 and the Senate's third reservation indicates that they are intended to bar the enforcement of arbitration decisions rendered in nations that are not signatories to the Inter-American Convention. The only express prerequisite to the court's jurisdiction is that the dispute between the parties concerns a commercial transaction or agreement. 9 U.S.C. Sec. 302 (Supp. IV 1992) (incorporating 9 U.S.C. Secs. 202 and 203 (1988)). Congress specifically excluded from the court's jurisdiction arbitration awards arising from disputes between citizens of the United States, but this exclusion excepted disputes involving property or performance outside the United States and disputes that have some reasonable relation with a foreign nation. 9 U.S.C. Sec. 202 (1988). If Congress had intended to exclude from the court's jurisdiction all awards rendered in the United States, it could have done so by express provision in the enacting legislation. Since it did not do so, we agree with the court that it had jurisdiction to confirm the arbitration award.
 
 
 16
 Our decision in Bergesen v. Joseph Muller Corp., 710 F.2d 928 (2 Cir.1983), further supports the court's holding that it had subject matter jurisdiction under the Inter-American Convention. In Bergesen, we rejected arguments similar to those of appellants in a case involving an analogous treaty. In Bergesen, we held that the court had jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, done June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, reprinted in 9 U.S.C.A. Sec. 201 (Supp.1994) (New York Convention), to confirm an arbitration award rendered in New York concerning a dispute between two foreign parties. Id. at 932-34.
 
 
 17
 Article I(1) of the New York Convention provides that it applies (1) to the "enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought" and (2) "to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought". Id. at 932 n. 2. We held that the court did not have jurisdiction based on the first part of this jurisdictional requirement, since the award was rendered in New York. Id. We held, however, that the court did have jurisdiction on the basis that the arbitration award was a nondomestic award, since it involved a dispute between two foreign parties. Id.
 
 
 18
 In reaching this conclusion, we considered the enacting legislation, which provided that an arbitration award between citizens of the United States was not subject to the New York Convention unless it had some reasonable relation with a foreign state. 9 U.S.C. Sec. 202 (1988). We reasoned that Congress also could have excluded from the New York Convention arbitration awards rendered in the United States concerning disputes between foreign parties, but that Congress did not do so. Bergesen, supra, 710 F.2d at 933. We concluded that "[i]t would be anomalous to hold that a district court could direct two aliens to arbitration within the United States under the statute [9 U.S.C. Sec. 206], but that it could not enforce the resulting award under legislation which, in large part, was enacted for just that purpose". Id.
 
 
 19
 A similar situation is presented in the instant action. Prome, a foreign corporation, commenced the arbitration process against Faberge, a domestic corporation, and Unisola, a foreign corporation. The underlying dispute concerned the parties' obligations under the 1971 agreement regarding the licensing of Faberge trademarks in Central America. This award would be considered a nondomestic award under the second part of the New York Convention. Furthermore, the enacting legislation with respect to the Inter-American Convention authorizes the court to "direct that arbitration be held in accordance with the [Inter-American Convention]". 9 U.S.C. Sec. 303 (Supp. IV 1992).
 
 
 20
 Appellants contend that Bergesen is inapposite, since it involved a different treaty. The legislative history of the Inter-American Convention's implementing statute, however, clearly demonstrates that Congress intended the Inter-American Convention to reach the same results as those reached under the New York Convention:
 
 
 21
 "The New York Convention and the Inter-American Convention are intended to achieve the same results, and their key provisions adopt the same standards, phrased in the legal style appropriate for each organization. It is the Committee's expectation, in view of that fact and the parallel legislation under the Federal Arbitration Act that would be applied to the Conventions, that courts in the United States would achieve a general uniformity of results under the two conventions."
 
 
 22
 H.R.Rep. No. 501, 101st Cong., 2d Sess. 4 (1990), reprinted in 1990 U.S.C.C.A.N. 675, 678; see also President's Message to the Senate Transmitting the Inter-American Convention on Commercial Arbitration, 1981 Pub. Papers 517 (June 15, 1981) ("This Convention is similar in purpose and effect to the New York Convention ....").
 
 
 23
 Moreover, the enacting legislation with respect to the Inter-American Convention does not contain language similar to the strict territorial approach provided in the first part of the New York Convention. This is further evidence that Congress did not intend the Inter-American Convention to preclude the enforcement of an arbitration award that is essentially foreign in character simply because the award is rendered in the United States. In the absence of such territorial language, and in light of Congress's intent that the two treaties should produce similar results, we believe that the court had subject matter jurisdiction in the instant action.
 
 
 24
 We agree with the court's decision that it had subject matter jurisdiction over the arbitration award pursuant to the Inter-American Convention.
 
 
 25
 (2) Modification and Confirmation of Arbitration Award
 
 
 26
 Appellants also contend that the court did not have authority to modify the award, since the Inter-American Convention expressly authorizes only the confirmation, recognition, or execution of an award. According to appellants, the court could not order modification of the award absent express authorization under the Inter-American Convention. We disagree.
 
 
 27
 The Inter-American Convention incorporates the FAA's terms unless they are in conflict with the Inter-American Convention's terms. 9 U.S.C. Sec. 307 (Supp. IV 1992). The FAA grants the courts authority to modify awards "[w]here there was an evident material miscalculation of figures ...; [or] [w]here the award is imperfect in matter of form not affecting the merits of the controversy". Id. Sec. 11 (1988). Since the Inter-American Convention is silent as to the modification of an award, the court's authority to modify an award pursuant to Sec. 11 is not in conflict with the express terms of the Inter-American Convention.
 
 
 28
 Moreover, the modification in the instant action did not concern the merits of the award. In paragraph 6a, the arbitrators merely calculated the final sum due Prome after accounting for Faberge's counterclaims. The court simply adjusted this amount to account for the arbitrators' correction of the typographical error in paragraph 1b.
 
 
 29
 We believe that the court had authority, pursuant to Sec. 11, to modify the award.
 
 
 30
 (B) GRANT OF PROME'S REQUESTED RELIEF
 
 
 31
 Appellants contend that the court erred in reaching the merits of Prome's petition. According to appellants, the court effectively granted Prome summary judgment by reaching the merits of Prome's petition. Appellants further contend that the court's failure to provide them with notice that it was treating Prome's petition as a motion for summary judgment precluded them from fully pleading their claims in accordance with Fed.R.Civ.P. 12(b). We disagree.
 
 
 32
 The court properly treated Prome's petition as a motion in accordance with the express provision of the FAA. Arbitration proceedings pursuant to the FAA are governed by the Federal Rules of Civil Procedure "only to the extent that matters of procedure are not provided for" in the FAA. Fed.R.Civ.P. 81(a)(3). Section 6 of the FAA provides that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions ...." 9 U.S.C. Sec. 6 (1988).
 
 
 33
 Since Prome appropriately sought relief in the form of a motion, the court was not required to comply with the pleading requirements of Fed.R.Civ.P. 12(b). O.R. Sec., Inc. v. Professional Planning Assocs., Inc., 857 F.2d 742, 748 (11 Cir.1988) (the rules of notice pleading, Fed.R.Civ.P. 8, do not apply in a proceeding to vacate an arbitration award because relief must be sought in the form of a motion). Furthermore, the court properly decided the merits based solely on the papers submitted by the parties in support of their motions. Legion Ins. Co. v. Insurance Gen. Agency, Inc., 822 F.2d 541, 541-43 (5 Cir.1987) (the court acted within its discretion in deciding a motion to vacate an arbitration award based only on the parties' motion papers).
 
 
 34
 We agree with the court's grant of appellee's motion for modification and confirmation of the arbitration award.
 
 
 35
 (C) UNILEVER'S MOTION TO DISMISS
 
 
 36
 Unilever contends that the court erred in denying its motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss for failure to state a claim. The court rejected Unilever's argument that, since it was not a party to the arbitration, the award could not be enforced against it. The 1971 agreement was binding upon all "successors and assigns" of Faberge. The court confirmed the arbitration award against Unilever on the ground that Unilever was Faberge's successor under the 1971 agreement. The court primarily relied on the statement by appellants' counsel, Robert F. D'Emilia, that Unilever had "acquired the worldwide business" of Faberge. Though that statement has probative force, Unilever was entitled to have at least a brief factual exploration of its successor status and to have the court make appropriate findings. The utility of such an exploration is underscored by the fact that at oral argument before us, D'Emilia stated that Unilever had never been involved in the acquisition of Faberge's Central American business. He asserted that Unilever N.V. had acquired Faberge's business and had assigned the Central American business to Unisola. In light of these statements, further fact-finding is necessary to determine whether Unilever is a successor to Faberge under the 1971 agreement.
 
 
 37
 Our decision in Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A., 312 F.2d 299 (2 Cir.), cert. denied, 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963), does not preclude the court from determining whether Unilever is a successor to Faberge. In Orion, we held that an arbitration award could not be enforced under an alter-ego theory against the parent corporation of one of the parties subject to the award. Id. at 301. We reasoned that a confirmation action was not the proper time to attempt to "pierce the corporate veil", due to the potentially complex fact-finding this inquiry would involve. Id.
 
 
 38
 In the instant action, however, a determination of whether Unilever is a successor to Faberge's interest will not require the court to pierce the corporate veil, nor will it require the court to engage in extensive fact-finding. The court simply must determine whether Unilever is a successor to Faberge. Since D'Emilia is both appellant's counsel and in-house counsel for Unilever, the necessary documents should be readily available.
 
 
 39
 We remand for a determination of whether Unilever is a successor to Faberge's interest in the 1971 agreement.
 
 
 40
 (D) RULE 11 SANCTIONS
 
 
 41
 Appellants contend that the court abused its discretion in denying their motion to impose sanctions pursuant to Fed.R.Civ.P. 11. Appellants had moved for sanctions on the ground that Prome had no basis in fact for asserting that the court had subject matter jurisdiction and for joining Unilever in this action. Appellants' contention is without merit.
 
 
 42
 The purpose of Rule 11 is to streamline litigation by thwarting the use of frivolous and abusive trial tactics. McMahon v. Shearson/American Express, Inc., 896 F.2d 17, 22 (2 Cir.1990). We review a court's Rule 11 determination for an abuse of discretion. Rodick v. City of Schenectady, 1 F.3d 1341, 1350 (2 Cir.1993).
 
 
 43
 The court stated that Prome showed poor judgment and engaged in sloppy legal work in asserting diversity jurisdiction. The court, however, found that Prome's lack of knowledge concerning Unisola's and Unilever's business structures could have provided a reasonable basis for a claim of diversity jurisdiction. Moreover, the court found that Unilever was liable for the award. In light of these findings, we believe that the court did not abuse its discretion in denying sanctions.
 
 
 44
 We agree with the court's denial of appellants' motion to impose sanctions.
 
 III.
 To summarize:
 
 45
 We affirm the court's order with respect to subject matter jurisdiction, modification of the arbitration award, and denial of sanctions. We remand for a further determination of whether Unilever is a successor to Faberge under the 1971 agreement.
 
 
 46
 Affirmed in part, remanded in part.