Timothy L. WOODS, Plaintiff–Appellant,

v.

SATURN DISTRIBUTION CORPORATION, a Delaware Corporation, Defendant–Appellee.

No. 94–55911.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 10, 1996.

Decided Feb. 27, 1996.

Stephen J. Perrello, Jr., San Diego, California, for plaintiff-appellant.

Gregory R. Oxford and Wallace M. Allan, O'Melveny & Myers, Los Angeles, California, for defendant-appellee.

Before BRIGHT *, SKOPIL, and WIGGINS, Circuit Judges.

Opinion by Judge WIGGINS.

WIGGINS, Circuit Judge:

## OVERVIEW

Timothy Woods appeals the district court's order granting Saturn Distribution Corporation's motion to confirm the arbitration award pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 9 (1994), and denying Woods's motion to vacate the arbitration award pursuant to 9 U.S.C. § 10(a)(2) (1994). The arbitration panel unanimously upheld Saturn's termination of its franchise agreement with Woods and awarded Woods $66,-754 plus reimbursement of any franchise fees paid to Saturn ($25,000 maximum). Woods contends that his actual damages exceed the award. On appeal, he argues that the district court applied the wrong legal standard for determining whether the arbitration panel was "evidently partial" under section 10(a)(2) or, alternatively, the court erred in not continuing the motions to allow time for

---

* Hon. Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

Woods to conduct discovery to show actual bias on the part of the arbitrators. We have jurisdiction under 28 U.S.C. § 1291 (1994), and we affirm the district court's order.

## FACTS AND PRIOR PROCEEDINGS

On September 21, 1989, the parties entered into a Dealer Agreement, whereby Saturn authorized Woods to construct and operate two Saturn dealerships in Southern California. Article 5A of the agreement provides that the FAA governs the franchise agreement and that the procedure contained in Saturn's Dealer Dispute Resolution Guide shall be the exclusive mechanism for resolving any claim or controversy relating to the franchise agreement.

Saturn's dispute resolution process consists of mediation and binding arbitration. Both mediation and arbitration are conducted by a panel of two Saturn dealers and two Saturn employees, randomly selected from a pool of volunteers consisting of ten Saturn dealers and ten Saturn employees trained in Saturn's dispute resolution process. If mediation does not resolve the dispute or if the parties agree in writing to waive mediation, the dispute shall be resolved by arbitration. An administrative officer resolves any objections to discovery requests and challenges for cause to arbitration panel membership. The officer also advises the panel members on questions of law, but does not participate in the panel's decision. All arbitration awards are binding and non-appealable, except as otherwise provided in the FAA. Pursuant to the Dealer Agreement, judgment upon any arbitration award may be entered and enforced in any court having jurisdiction.

According to Saturn, it terminated the franchise agreement in August 1993 because Woods failed to construct the Saturn facilities as required by the franchise agreement. Woods alleged that Saturn wrongfully terminated their agreement. The parties' mediation efforts in December 1993 were unsuccessful, and arbitration was scheduled for April 7, 1994. Prior to arbitration, Woods's counsel sent a letter to Saturn, stating that Woods "objects to arbitration before a panel

composed of persons so closely tied to and dependent upon Saturn that any reasonable person would conclude he is not likely to receive a fair hearing." Letter from Shapiro to Collins of 3/14/94, at 2. The letter also stated that "the arbitration procedure set forth in the Dealer Agreement ... lacks fundamental fairness and is inherently biased against a dealer and in favor of Saturn." *Id.* Saturn responded that it believed that the "arbitration procedures are fair, reasonable, and legally enforceable." Letter from Oxford to Shapiro of 3/23/94, at 1.

On April 5, 1994, Woods filed a complaint in San Bernardino Superior Court for, *inter alia,* breach of contract and requested injunctive relief to prevent the arbitration from proceeding. Saturn removed that action to federal court on April 6, 1994. The district court denied Woods's motion for a temporary restraining order and ordered Saturn to show cause why a preliminary injunction should not be issued. Hearing on the order to show cause was set for April 26, 1994, but was taken off calendar by stipulation of the parties because the arbitration proceeded on April 7 and 8, 1994.

On April 9, 1994, the four-member arbitration panel [1] issued its decision, upholding Saturn's termination of the franchise agreement and awarding Woods $66,754 plus reimbursement of any franchise fees paid to Saturn ($25,000 maximum). The district court granted Saturn's motion to confirm and denied Woods's motion to vacate the arbitration award. The court held that Woods failed to show that "the decision of the allegedly biased arbitrator(s) was actually the result of the alleged bias," and that the " 'appearance of impropriety, standing alone is [an] insufficient' " basis for vacating the arbitration award. The court also denied Woods's request for a continuance to allow him an opportunity to depose Saturn employees and dealers (including the arbitrators). The court stated that Woods provided no legal authority for continuing the motion to confirm and allowing time for discovery in light of the summary nature of the court's review

1. The arbitration panel consisted of a dealer from Appleton, WI; a dealer from Cedar Rapids,

IA; a Saturn UAW/Sales, Service, Marketing representative; and a Saturn field consultant.

of an arbitration award. Moreover, even if the court had such authority and Woods's evidence (Woods's declaration and those of two non-Saturn dealers) was admissible, the court found that Woods failed to show that the requested discovery would reveal that the arbitration decision actually resulted from the arbitrators' bias.

## DISCUSSION

### I. STANDARD OF REVIEW

 The district court's decision confirming the arbitration award and denying vacatur is reviewed *de novo*. *Employers Ins. of Wausau v. National Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1485 (9th Cir. 1991). Specifically, the court's adoption of a standard of impartiality for arbitrators is reviewed *de novo*. *Toyota of Berkeley v. Automobile Salesmen's Union*, 834 F.2d 751, 755 (9th Cir.1987), *cert. denied*, 486 U.S. 1043, 108 S.Ct. 2036, 100 L.Ed.2d 620 (1988), *modified*, 856 F.2d 1572 (9th Cir.1988). Factual findings underlying the court's decision will be reversed only for clear error. *Id.* at 756.

 The decision to deny a continuance is in the sound discretion of the trial court and will not be reversed except upon a showing of clear abuse. *United States v. Real Property Located at Incline Village*, 47 F.3d 1511, 1521 n. 5 (9th Cir.1995), *cert. granted sub nom. Brian J. Degen v. United States*, — U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996).

### II. ALLEGED BIAS OF THE ARBITRATORS

 [1] Section 10(a)(2) of the FAA provides that the court may vacate an arbitration award "[w]here there is evident partiality ... in the arbitrators." 9 U.S.C. § 10(a)(2) (1994). *See Schmitz v. Zilveti*, 20 F.3d 1043, 1047 (9th Cir.1994) (standard for determining partiality for arbitrators differs from standard for judges). The party challenging the arbitration decision has the burden of showing partiality. *See Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745 (9th Cir.1985). Evident partiality has been found

in nondisclosure cases and actual bias cases. *See Schmitz*, 20 F.3d at 1045.

 In nondisclosure cases, vacatur is appropriate where the arbitrator's failure to disclose information gives the impression of bias in favor of one party. *See Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 149, 89 S.Ct. 337, 339–40, 21 L.Ed.2d 301 (1968) (holding that impression of bias is sufficient to vacate arbitration award pursuant to 9 U.S.C. § 10(a)(2)); *Schmitz*, 20 F.3d at 1047 (stating that standard for determining evident partiality in nondisclosure cases is whether there is a "[r]easonable impression of partiality"). A reasonable impression of bias sufficiently establishes evident partiality because the integrity of the process by which arbitrators are chosen is at issue in nondisclosure cases. *Id.* ("The parties can choose their arbitrators intelligently only when facts showing potential partiality are disclosed."). Whether the arbitrator's decision itself is faulty is not necessarily relevant. *Id.*

 [2] In contrast, the integrity of the arbitrator's decision is directly at issue in actual bias cases. *Id.* "The appearance of impropriety, standing alone, is insufficient" to establish evident partiality in actual bias cases, *Kinney*, 756 F.2d at 746, because a reasonable impression of partiality does not necessarily mean that the arbitration award was the product of impropriety. *Schmitz*, 20 F.3d at 1047. This court has acknowledged that use of the reasonable impression of bias language from *Coatings* (a nondisclosure case) in *Kinney* (an actual bias cases) is "confusing." *Id.* We noted in *Schmitz*, however, that because "[f]inding a 'reasonable impression' of partiality is not equivalent to, nor does it imply, a finding of actual bias" and the court must find actual bias in actual bias cases, " 'reasonable impression' means something different in an actual bias case than it means in nondisclosure cases under *Commonwealth Coatings*." *Id.* Therefore, "the party alleging evident partiality [in actual bias cases] must establish specific facts which indicate improper motives." *Kinney*, 756 F.2d at 746.

In the instant case, the district court applied the legal standard used in actual bias

cases and found that Woods failed to prove any facts to show that the arbitration award resulted from the arbitrators' alleged bias. The court stated that "even assuming that there is evidence of relationships between Saturn and the arbitrators, [Woods] failed to produce any evidence showing that the decision of the arbitrators in this case was the result of those relationships. In sum, [Woods] has failed to show actual bias."

■ [3] Woods contends that the court applied the wrong legal standard and that the arbitrators' alleged financial dependence on Saturn provides a reasonable impression of partiality to support vacatur. He further contends that case law involving actual bias is inapposite because he is challenging the composition of the arbitration panel rather than the partiality of the individual arbitrators. This distinction is irrelevant. The policy consideration necessitating the standard in nondisclosure cases (i.e., to ensure that the parties are able to choose the arbitrator intelligently) does not apply here. Although Woods characterizes his challenge as one against the procedure for selecting the arbitrators, his objection is not directed at any nondisclosure of relevant information and is essentially an attack on the integrity of the arbitration award. Therefore, the legal standard for determining actual bias is applicable to Woods's claim of partiality.

The district court correctly found Woods's claim of bias to be analogous to the unsuccessful claims of actual bias in *Kinney* and *Sheet Metal Workers International Association Local 162 v. Jason Manufacturing*, 900 F.2d 1392 (9th Cir.1990).[2] In *Kinney*, the court rejected the employer's contention that the arbitration award in favor of the union was due to the arbitrators' actual bias, finding that the employer failed to provide any convincing evidence to support vacating the award.[3] 756 F.2d at 744. The Ninth Circuit rejected a similar claim of actual bias in *Jason*. 900 F.2d at 1398.

■ [4] Like the employer in *Kinney* and *Jason*, Woods knew of the arbitrators' relationship with Saturn when he agreed to the arbitration procedure. *Kinney*, 756 F.2d at 746 ("When the parties have agreed upon a particular method of dispute resolution, it should generally be *presumed fair*, and we see no evidence to contradict this presumption here.") (emphasis added) (citation omitted); *Jason*, 900 F.2d at 1398 (finding employer consented to arbitration procedure by signing collective bargaining agreement). Although Woods argues for the first time in his reply brief that the Dealer Agreement's binding arbitration requirement is unconscionable, this argument is meritless. He provides no evidence to support his assertion of unconscionability other than conclusory statements about the alleged overwhelming disparity in economic power between Saturn and Woods, and offers no legal authority for finding unconscionability based only on the parties' unequal bargaining positions.

■ Also like in *Kinney* and *Jason*, Woods relies solely on the financial relationship between the arbitrators and Saturn to support his allegation of evident partiality. *Kinney*, 756 F.2d at 746 (finding employer's argument that arbitrators, who owned companies that contracted with the union party in the same geographic area as the employer, had a pecuniary interest in an outcome adverse to the employer was insufficient to show bias because interest was known to the employer prior to arbitration); *Jason*, 900 F.2d at 1398 (rejecting fact that employer's competitors and union sat on arbitration panel as indicia of bias). Woods offers no evidence to show that the arbitrators had a personal stake in

---

**2.** Cases involving an arbitrator's professional relationship with a party generally concern a prior relationship, *see, e.g., Health Servs. Management Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir. 1992), or an undisclosed ongoing relationship. *See, e.g., Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1201 (11th Cir.1982). The instant appeal is distinguished from these cases in that Woods knew of the arbitrators' alleged financial dependence when he agreed to the arbitration procedure in his Dealer Agreement.

**3.** Although *Kinney* can be distinguished because the employer had waived its objection to the selection of the panel members by not raising the bias issue at that proceeding, the holding does not rest solely on a finding of waiver. 756 F.2d at 746. As discussed below, the court found the employer's allegations insufficient to show a reasonable impression of actual bias.

the outcome of the arbitration. For example, he did not present any evidence to show that the dealer representatives would be more likely to decide in favor of Saturn, or that they would benefit from deciding in favor of Saturn.[4] According to Saturn, Woods was to operate his Saturn dealerships in a potentially profitable market. Presumably, once Saturn terminated Woods's franchise agreement, it would award the franchise to another dealer in the area to develop that market rather than increase the number of Saturn cars delivered to the arbitrators' dealerships. Similarly, with respect to the Saturn employees on the arbitration panel, Woods merely argues that they "naturally tend to favor Saturn."[5] His assertion that their jobs would be jeopardized if they decided against Saturn is unsupported; for example, he does not show that the employees who may serve as arbitrators are not subject to an employment contract that specifies their salary and tenure. In sum, Woods has presented no evidence to show that the arbitrators, two of whom were dealers and subject to the same arbitration procedure in the event they had a dispute with Saturn, were predisposed to favor Saturn.

The district court also correctly rejected Woods's reliance on *Pitta v. Hotel Association of New York City*, 806 F.2d 419 (2d Cir.1986), and *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds*, 748 F.2d 79 (2d Cir.1984), for vacating the arbitration award based on the fundamental unfairness of the arbitration proceeding. These cases involve significantly different facts from the instant appeal. *Pitta*, 806 F.2d at 423–24, involved an arbitra-

tor's authority to determine the validity of his own dismissal. The arbitrator's personal stake in the outcome was so obvious that the court did not need to inquire into whether the arbitrator showed "actual" or "apparent bias." *Id.* ("The relationship between a party and the arbitrator may, in some circumstances, create a risk of unfairness so inconsistent with basic principles of justice that the arbitration award must be automatically vacated."). Here, the arbitrators' alleged personal stake in the outcome of the Woods/Saturn arbitration is not outrageous like the one in *Pitta;* instead, it is more attenuated and similar to the financial relationship in *Kinney*.

In *Morelite*, 748 F.2d at 84, the Second Circuit vacated an arbitration award because a reasonable person would conclude that the arbitrator would be biased in favor of his father in the arbitration. The court stated that vacatur was warranted solely by the father-son relationship. *Id.* Cf. *Consolidation Coal Co. v. Local 1643, United Mine Workers of America*, 48 F.3d 125 (4th Cir. 1995) (rejecting familial relationship as per se grounds for vacating arbitration award). Here, the relationship is an attenuated pecuniary one, which does not automatically mandate vacatur of the arbitration award. *See Kinney*, 756 F.2d at 744. Further, in *Morelite*, the court stated that a party may agree to designate an arbitrator who is otherwise disqualified for interest. 748 F.2d at 84 n. 5. There was no such waiver in *Morelite* because the identity of the arbitrator was not known at the time the parties agreed to arbitration. *Id.* In contrast, Woods, who challenges the composition of the arbitration

**4.** Woods asserted that "it is generally known in the automobile industry" that there was a short supply of Saturn cars in 1992–94 and manufacturers can favor dealers by providing promotional support. *See* Woods's decl. at 18:19–18:21. He fails to provide, however, any documentary evidence to show that the supplies were in fact limited or testimony by a Saturn dealer affected by the alleged shortage. Based on his unsupported premise, Woods argues that the dealer arbitrators were biased because a favorable decision for Saturn could result in a higher allotment of the limited supply of Saturn automobiles.

Even assuming that supplies were limited, Saturn uses a formula to allot cars based on the dealers' ability to sell the automobiles and de-

mand for Saturn cars in that area. Woods provided no evidence that the dealer arbitrators in his case would have benefitted in car allocations due to the outcome of his arbitration, despite application of the distribution formula.

**5.** An arbitration panel consisting of representatives of the parties and a part-time judge is common. *See Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 679 (7th Cir.) ("The parties to an arbitration choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen.") (citation omitted), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983), *modified*, 728 F.2d 943 (1984).

panel, knew of the composition prior to signing the Dealer Agreement.

■ For the foregoing reasons, the district court did not err in concluding that Woods failed to prove evident partiality.

## III. CONSTITUTIONAL DUE PROCESS CLAIM

■ As a general rule, this court will not consider an issue raised for the first time on appeal even though it has discretion to do so. *See Bolker v. Commissioner,* 760 F.2d 1039, 1042 (9th Cir.1985) (listing three exceptions to rule). We decline to exercise our discretion to consider Woods's constitutional claim that Saturn's arbitration procedures violate his Fifth Amendment due process rights[6] because Woods merely repeats his arguments regarding evident partiality in support of his constitutional claim.

## IV. WOODS'S REQUEST FOR A CONTINUANCE

Woods contends that if the panel decides that the district court applied the correct legal standard for evident partiality and that he must prove that the arbitration award was the result of the arbitrators' actual bias, he should be allowed an opportunity to depose the arbitrators and others to obtain evidence of the arbitrators' relationship with Saturn. We need not consider whether the district court had authority to grant a continuance because the court found that even if discovery was permitted, Woods did not show that further discovery was warranted.

■ The Federal Rules of Civil Procedure do not apply to "post hoc" questioning of arbitrators in Title 9 proceedings and "any questioning of arbitrators should be handled pursuant to judicial supervision and limited to situations where clear evidence of impropriety has been presented." *See Andros Compania Maritima v. Marc Rich & Co.,* 579 F.2d 691, 702 (2d Cir.1978). As discussed above, Woods has not offered any

such clear evidence of improper conduct by the arbitrators.

■ Woods seems to argue that he was not previously able to show actual bias because only deposition of the arbitrators would enable him to establish actual bias and Saturn's arbitration procedures did not provide for deposition discovery. Although Saturn's arbitration procedures allow only limited discovery of "documents or things which would be material to the claims involved in the arbitration hearing and which are in the possession or control of the party" and do not provide for depositions of the arbitrators, Woods conducted virtually no discovery prior to the arbitration. There is no record that he ever sought and was denied an opportunity to examine the arbitrators even though their names were disclosed two months before the arbitration. As permitted by the arbitration procedures, Woods exercised his one peremptory challenge to remove one arbitrator. He did not, however, remove any arbitrators for cause even though the arbitration procedures allowed unlimited challenges for cause.[7]

■ Although it may be difficult to prove actual bias without deposing the arbitrators, deposition of arbitrators are "repeatedly condemned" by courts. *See O.R. Securities, Inc. v. Professional Planning Assocs., Inc.,* 857 F.2d 742, 748 (11th Cir.1988) (citation omitted). Woods could have compiled evidence showing, e.g., the percentage of arbitration decisions that have been in favor of Saturn or the denial of any requests to strike an arbitrator for cause, to provide some indicia of improper motive. *See, e.g., Taylor v. Nelson,* 615 F.Supp. 533, 537 (W.D.Va.1985) (vacating arbitration award based in part on such statistics), *vacated on other grounds,* 788 F.2d 220 (4th Cir.1986). *See also O.R. Securities,* 857 F.2d at 749 (holding district court did not abuse discretion in not permitting further discovery when issue of fraud was discoverable during arbitration). Without more, the district court did not abuse its discretion in

6. Woods does not argue that the FAA, as applied here, violates due process.

7. Woods contends that he did not seek to remove any arbitrators for cause because he was challenging the composition of the arbitration panel rather than the individual arbitrators' bias. As discussed above, this distinction is meritless.

refusing to continue ruling on Saturn's motion to confirm.

## CONCLUSION

For the foregoing reasons, we affirm the district court's order granting Saturn's motion to confirm the arbitration award and denying Woods's motion to vacate the arbitration award.