**EMPRESA CONSTRUCTORA CON- TEX LIMITADA, a Chilean Partnership, Plaintiff,**

v.

**ISEKI, INC., a Delaware corporation, Defendant.**

**No. 00CV00798JLAB.**

United States District Court, S.D. California.

July 28, 2000.

---

Robert C. Wright, Joseph T. Ergastolo, Wright & L'Estrange, San Diego, CA, for Plaintiff.

Phillip Ashman, McQueen & Ashman, LLP, for Defendant.

## ORDER DENYING DEFENDANT'S REQUEST TO CONDUCT DISCOVERY FOR OPPOSITION TO ENFORCEMENT OF FOREIGN ARBITRATION AWARD

LARRY A. BURNS, United States Magistrate Judge.

### I. INTRODUCTION

This matter is before the court pursuant to the Order Following Early Neutral Evaluation Conference in this case. Counsel for both parties were ordered to file briefs outlining their positions regarding whether defendant Iseki, Inc. ("Iseki") should be permitted to conduct specific additional discovery for purposes of opposing Empresa Constructora Contex Limitada's ("Contex") action to confirm and enforce a foreign arbitration award. The court finds the matter appropriate for submission on the papers and without oral argument, pursuant to Local Civil Rule 7.1(d)(1). Having carefully considered the papers submitted and relevant authority, the court *DENIES* Iseki's request for leave to conduct the requested additional discovery.

### II. FACTS AND PROCEDURAL HISTORY

The facts pertinent to the due process discovery issue are taken from the parties' briefs and the facts recited in the arbitrator's 101–page August 1997 Final Judgment ("Final Judgment"), provided as Exhibit "A" to Contex's Complaint For Enforcement of Foreign Arbitration Award and to Contex's Opening Brief in the instant discovery dispute. Iseki is a United States corporation based in San Diego, California. Empresa de Obras Sanitarias de Valparaiso S.A. ("ESVAL"), a state-owned company headquartered in Valparaiso, Chili, had undertaken major construction on an important public works sewer main between the coastal cities of Vina del Mar and Valparaiso, Chile. ESVAL contracted with Iseki to complete the project.[1] In 1995, Iseki subcontracted

---

1. In 1992, ESVAL had awarded a contract to Consorcio Oceanico ("Oceanico"), a multina-

portions of the work to Contex, a privately-owned Chilean company. The Iseki–Contex contract expressly provided for arbitration in Santiago, Chile of any disputes arising under the contract. The parties selected and identified by name in their contract the arbitrator to be used should arbitration become necessary.

Serious structural damage occurred to certain buildings and a street in the course of the sewer work, which gave rise to several contract and other disputes, including a dispute between Contex and Iseki after the project scope of work had expanded, permitting and other delays had caused cost overruns, and payments were delayed. Contex notified Iseki it would cease work on the project and, in September 1995, invoked the arbitration provisions of the parties' contract to recover payments allegedly owed for work performed.[2] Iseki counterclaimed. Iseki's counter claim was partially successful, but the net arbitration award was in favor of Contex, in an amount whose present value including interest is represented to be $3,200,000.

The arbitrator the parties had mutually selected conducted the arbitration proceedings in Chile, as agreed in the Iseki–Contex contract. Contex represents that the arbitration occurred "over two years, with 22 sessions and an almost 600–page record." Contex Response Brief, p. 2. "Twelve hearings were held" and Iseki "was represented by at least four attorneys." Contex Opening Brief, p. 2. Iseki describes as "glaring admissions" from Contex's Opening Brief that "the arbitrator held hearings on June 24, 25, 27, 28 and July 3, 1996. . . ." Iseki Reply Brief, p.

2. The notoriety and gravity of the problems associated with the failed project had caused various official investigations to be initiated against Iseki and Oceanico, allegedly at the instigation of ESVAL, resulting among other things in certain criminal charges. Iseki represents criminal charges were pending against the company at the time of the arbitration. Iseki asserts this state of affairs prevented any of its company representatives from traveling to Chile to attend the arbitration proceedings for fear of detention there.

The summary of the arbitration proceedings in the Final Judgment records the evidence presented by both sides, an analysis of the law, and a reasoned decision. That record substantiates that both sides submitted briefs and responses, both sides presented witnesses, Iseki's counsel was present at all times and was permitted to cross-examine the Contex witnesses in addition to presenting witnesses on behalf of Iseki, no Iseki witness offered was refused the opportunity to testify, and no declaration or other documentary evidence Iseki offered appears to have been refused. Iseki does not dispute Contex's representation that Iseki appealed the arbitrator's ruling to the Chilean Court of Appeal and thereafter filed an unsuccessful petition for review with the Chilean Supreme Court. Contex Opening Brief, p. 2.

Iseki opposes confirmation of the arbitration award on grounds its due process rights were allegedly violated during the arbitration proceedings because "Iseki" could not "appear" and "was unable to present its defense," consequently suffering a "trial in absentia." Iseki Reply Brief, p. 2; Iseki Opening Brief, p. 3

tional company, to complete the project. Oceanico in turn contracted with Iseki, a lessor of machinery needed for new deep excavations. Oceanico's participation in the project was apparently followed by a succession of difficulties. At the end of 1994, Oceanico withdrew from the contract. As a consequence, ESVAL contracted directly with Iseki to complete the project. Iseki subcontracted with Contex to execute a portion of the work it committed to perform for ESVAL. Contex Opening Brief, Ex. "A", pp. 3–4.

**2.** ESVAL apparently prevailed against Iseki in a separate arbitration arising out of the project in Chile to recover damages. Iseki Opening Brief, p. 2. From a perspective unclear to this court, Iseki characterizes the results in the ESVAL arbitration and in the Contex arbitration as "hopelessly inconsistent." *Id.*

("Iseki was prevented from appearing in Chile and defending itself because of a criminal investigation that ultimately was found to be meritless."). Iseki contends it now needs to conduct "limited written discovery" through document requests, interrogatories, and requests for admissions in order to prove its contentions that Contex's arbitration award was obtained in violation of Iseki's due process rights (Iseki Opening Brief, p. 3):

> Iseki will ask questions regarding: (1) whether Contex was aware of the criminal investigation of Iseki; (2) whether Contex was aware of the criminal investigation of Oceanico; (3) whether Contex knew that certain representatives of Oceanico had been detained and not allowed to leave the country; (4) whether Contex knew that Iseki's representatives could not appear in Chile without being arrested by Chilean authorities; (5) whether any of Iseki's representatives ever appeared in Chile during the pendency of the proceedings or at any of the many depositions and hearing held in Santiago; (6) whether Contex was aware of the congressional and executive branch investigations conducted during the project; and (7) whether Contex was aware of the other investigations undertaken by the various taxing authorities.

"In essence, Contex will be asked to admit that the project's failure became a huge scandal in Chile and Iseki was disabled from defending itself by the government's attempts to make Iseki, and the other foreign contractors, the scapegoats." Iseki Opening Brief, p. 3. Iseki believes the responses to that discovery will show Contex knew Iseki company representatives could not personally attend the arbitration proceedings in Chile because of criminal exposure, and "Contex took advantage of this disability to push through an unjust arbitration award in violation of Iseki's due process rights." Iseki Opening Brief, p. 3.

Contex disagrees that "[a]dmissions by Contex regarding the circumstances that existed at the time of the arbitration and Iseki's inability to appear and defend itself in those proceedings will allow Iseki to properly defend against Contex's motion to confirm the award." Iseki Opening Brief, p. 4. Contex opposes granting leave to conduct additional discovery on grounds the information sought is irrelevant to the award confirmation proceedings, including to a determination of Iseki's due process claim. Contex further maintains it had no influence or control over the disputes collateral to the breach of contract claims it pursued against Iseki, Iseki was at all times represented by counsel, and Iseki offers no explanation how having its representatives present at the proceedings would have affected the outcome, as Iseki was plainly aware of the proceedings and was not prevented from providing direction to its lawyers. Contex Reply Brief, pp. 1–2.

## III. DISCUSSION

### A. *Discovery In Arbitration Enforcement Actions*

The parties agree this arbitration confirmation action is controlled by the Inter–American Convention on International Commercial Arbitration, 9 U.S.C. § 301 *et seq.* ("Inter–American Convention"). Contex Opening Brief, p. 3; Iseki Reply Brief, p. 3. Arbitration agreements are intended to make arbitration decisions binding and enforceable and to limit how parties may challenge them. *See Volt Information Sciences v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). "A district court's 'review of a foreign arbitration award is quite circumscribed.'" *Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 29 F.Supp.2d 1168, 1171 (S.D.Cal.1998) (citing *Ministry of Defense of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir.1992)). Absent extraordinary circumstances, a confirming court is not to reconsider an

arbitrator's findings. *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.,* 156 F.3d 310, 315 (2nd Cir.1998). "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition of enforcement of the award specified in the said Convention." 9 U.S.C. § 207. The Inter–American Convention expressly provides "Sections 202, 203, 204, 205, and 207 of [Title 9, *i.e.* portions of the New York Convention [3]] shall apply to this chapter as if specifically set forth herein...." 9 U.S.C. § 302 (1999). In addition, "[t]he Inter–American Convention incorporates the FAA's [Federal Arbitration Act, 9 U.S.C. §§ 1–16 [4]] terms unless they are in conflict with the Inter–American Convention's terms." *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.,* 23 F.3d 41, 45 (2nd Cir.1994).

> "The New York Convention and the Inter–American Convention are intended to achieve the same results, and their key provisions adopt the same standards, phrased in the legal style appropriate for each organization. It is the Committee's expectation, in view of the fact that the parallel legislation under the Federal Arbitration Act would be applied to the Conventions, that courts in the United States would achieve a general uniformity of results under the two conventions."

*Id.* (quoting H.R.Rep. No. 501, 101st Cong., 2d Sess. 4 (1990), reprinted in 1990 U.S.C.C.A.N. 675, 678).[5] Accordingly, authority addressing the application or interpretation of the FAA and the New York Convention regarding discovery in post-arbitration proceedings can be applied to the same issues arising under the Inter–American Convention.

■ The burden of proof is on the party defending against enforcement of the arbitral award. *See Imperial Ethiopian Gov't v. Baruch–Foster Corp.,* 535 F.2d 334, 336 (5th Cir.1976); *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier (RAKTA),* 508 F.2d 969, 973 (2nd Cir.1974) (the Second Circuit's review of the legislative backdrop of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, implemented by Chapter 2 (§§ 201–208) of Title 9 of the United States Code, concluding that it "clearly shifted the burden of proof to the party defending against enforcement."). However, there is no unqualified right to any discovery a party may request, limited only by relevancy. *See Imperial Ethiopian Gov't,* 535 F.2d at 337 ("That position would be too broad in an ordinary civil action. It is even more clearly wrong in the summary proceeding here involved. The loser in arbitration cannot freeze the confirmation proceedings in their tracks and indefinitely postpone judgment by merely requesting discovery.") Case law addressing discovery rights in post-award proceedings under Title 9 leaves little doubt the right to obtain discovery in an action to overturn an arbitral decision is strictly limited.

■ The district court is empowered to act in arbitration confirmation proceedings with respect to discovery. *Imperial Ethiopian Gov't,* 535 F.2d at 337. To justify discovery, the party challenging the arbitration decision has the burden of showing the alleged defect, such as partiality of the arbitrators or some other fundamental defect. *See Woods v. Saturn Distribution Corp.,* 78 F.3d 424, 427 (9th Cir.1996);

---

**3.** "[T]he Convention on the Recognition and Enforcement of Foreign Arbitral Awards, done June 10, 1958, ... 9 U.S.C.A. § 201" *et seq. Productos Mercantiles E Industriales,* 23 F.3d at 44.

**4.** The FAA applies to "a written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such con-

tract or transaction, or the refusal to perform the whole or any part thereof ...." 9 U.S.C. § 2.

**5.** "In proceedings under Title 9, U.S.C., relating to arbitration, ... [the Federal Rules of Civil Procedure] apply only to the extent that matters of procedure are not provided for in those statutes ...." FED.R.CIV.P. 81(a)(3).

*Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.,* 756 F.2d 742, 745 (9th Cir.1985). Unless a party presents clear evidence of impropriety, the party will not be permitted to conduct additional discovery. *Woods,* 78 F.3d at 430.

The Ninth Circuit, like several other circuits, looks to the allegations of impropriety in the arbitration process to determine whether a party has articulated a defect of a kind and degree sufficient to warrant discovery. *See Andros Compania Maritima, S.A. v. Marc Rich & Co.,* 579 F.2d 691 (2nd Cir.1978) (cited with favor in *Woods,* 78 F.3d at 430) (finding the award challenger failed to raise a genuine issue of material fact requiring an evidentiary hearing or discovery regarding allegations of arbitrator bias and affirming the district court's denial of both discovery and an evidentiary hearing). Moreover, district courts do not abuse their discretion "in not permitting further discovery when [the] issue of [*e.g.*] fraud was discoverable during arbitration." *Woods,* 78 F.3d at 430, citing *O.R. Securities, Inc. v. Professional Planning Associates, Inc.,* 857 F.2d 742, 749 (11th Cir.1988). Accordingly, parties are expected to exercise due diligence in protecting their rights.

## B. *Iseki Has Not Met Its Burden*

Accepting all Iseki's representations to be true for purposes of ruling on the discovery issue, the court finds Iseki has not shown "clear evidence of impropriety" or of any other fundamental defect in the arbitration proceeding the requested discovery would substantiate. Such a showing is required before discovery in support of a challenge to an arbitral award is appropriate. *See Woods,* 78 F.3d at 430.

The Inter–American Convention at Article 5 presents just five possible grounds for a district court to refuse to recognize and execute the arbitral decision, portions of only two of which could be implicated by Iseki's challenge: "a. That the parties to the agreement were subject to some incapacity under the applicable law ... b. That the party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense ...." 9 U.S.C. § 301, Inter–American Convention, Article 5.1. Article 5.2 further provides: "2. The recognition and execution of an arbitral decision may also be refused if the competent authority of the State in which recognition and execution is requested finds: ... b. That the recognition or execution of the decision would be contrary to the public policy ('ordre public') of that State."[6] *Id.*

Iseki predicates its claim of entitlement to discovery on Article 5.1.b: "That the party against which the arbitral decision has been made ... was unable, for any other reason, to present his defense." Iseki Reply Brief, p. 3. Its purported inability to "appear" at the arbitration, as demonstrated by the absence of a corporate representative in attendance during the proceedings, is the procedural infirmity Iseki claims should invalidate Contex's award. *Id.* at 4. Yet, neither that position, nor any of the other potential defenses articulated in the Conventions will be furthered by permitting the discovery Iseki seeks leave to propound.

Iseki's theory is that it was denied an adequate opportunity to defend itself in the underlying arbitration proceedings because no corporate representatives could be present during proceedings for fear of detention in Chile on criminal charges, a circumstance that prevented Iseki from fairly presenting its case, even though it

---

**6.** To find a public policy violation on the basis of the discovery as framed, even assuming Contex's responses would all be supportive of Iseki's assertions of what Contex knew at the time of the arbitration, would require a find-

ing that the process and award "violate the forum state's most basic notions of morality and justice." *Fotochrome, Inc. v. Copal Co., Ltd.,* 517 F.2d 512, 516 (2d Cir.1975).

was represented by counsel. Iseki frames its "due process" issue in traditional terms of a right to appear and to be heard, but Iseki is a corporate entity, not an individual. Moreover, this alleged defect in the proceedings was patent, not latent. This is not a nondisclosure case. Iseki does not allege fraud or arbitrator bias or similar concealable defects as the matter to be proved. Iseki fails to show how the discovery responses could reveal purported due process violations that were not evident during the course of the arbitration proceedings. The alleged defect appears to have passed without objection from Iseki.

■ The parties bargained for arbitration in Santiago, Chile and jointly selected the arbitrator long before this dispute arose. The criminal charges Iseki contends prevented its representatives from attending the arbitration were related to the project, but were ancillary to Contex's contract dispute with Iseki. Iseki asserts Contex took unfair advantage of that alleged disability. Yet, Iseki fails to articulate any misconduct by Contex or the arbitrator in creating that disability or any prejudice to the presentation of its case arising out of that circumstance. Iseki does not explain why it was inhibited from communicating with its lawyers in Chile throughout the process, for example by telephone, E–Mail, or facsimile transmissions. Iseki contends only that no corporate representative was physically present "to direct" its defense.[7] Iseki does not attempt to explain whether or why the declarations, other evidence, and briefs submitted by its counsel to the arbitrator were insufficient to present its case. Based on the summary of the proceedings in the Final Judgment, Iseki's attorneys raised no issue during the arbitration about any due process or other concern associated with the absence of Iseki personnel.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The right to due process under the arbitration conventions does not include the complete set of procedural rights guaranteed by the Federal Rules of Civil Procedure. By agreeing to arbitration, Iseki subjected itself to the advantages and disadvantages of that dispute resolution process. *See RAKTA,* 508 F.2d at 975. The Final Judgment record memorializes the process Iseki received at the arbitration. Iseki points to no deficiencies in that record in support of its discovery request. The discovery Iseki seeks will contribute nothing to the record of its "day in court" or to proof whether it had ample opportunity to present its interpretation of the facts and its legal theories to the Tribunal. Iseki identifies no particular individual whose physical presence would have affected in any way the conduct or outcome of the proceedings, or whose absence prejudiced a full and fair hearing.[8] Iseki's counsel presented an ap-

---

7. Iseki states communication difficulties existed not only due to the geographical distance of key personnel, but also from language barriers among its Spanish-speaking Chilean counsel, its Japanese-speaking officers, and its English-speaking project manager. As Iseki's own choices created the potential for such difficulties, the burden of resolving those difficulties when they allegedly arose in this case ought neither to be shifted to the other party to the arbitration nor be raised for the first time after the arbitration is concluded.

8. Even if Iseki had made a showing that the absence of any particular corporate witness resulted in some particular adverse effect on the case Iseki presented to the arbitrator, which Iseki does not attempt to show, such exclusion would not compel additional post-result discovery: "inability to produce one's witnesses before an arbitral tribunal is a risk inherent in an agreement to submit to arbitration. By agreeing to submit disputes to arbitration, a party relinquishes his courtroom rights—including to subpoena witnesses...." *RAKTA,* 508 F.2d at 975. "When the parties have agreed upon a particular method of dispute resolution, it should generally be presumed fair ...." *Sheet Metal Workers Int'l,* 756 F.2d at 746.

parently comprehensive defense, including documentary evidence, declarations, witnesses, cross-examination, argument, and legal briefs. Through its counsel's advocacy of its positions, Iseki actively participated in the entire process. Iseki was thus, at a minimum, "otherwise able to present [its] defense" within the meaning of Inter–American Convention Article V.1.b.

Moreover, the Final Judgment does not indicate Iseki ever raised any due process concern during the proceedings. A cursory review of the entire Final Judgment discloses Iseki does not appear to have protested or requested a continuance of the arbitration. Iseki does not appear to have drawn the criminal investigation issues and alleged effects to the attention of the arbitrator. "[I]t is well settled that a party may not sit idle through an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse." *Marino v. Writers Guild of America*, 992 F.2d 1480, 1484 (9th Cir.1993). "As a general rule, this court will not consider an issue raised for the first time on appeal even though it has discretion to do.so." *Woods*, 78 F.3d at 430.

The discovery Iseki now seeks could have been identified and pursued at the time of the arbitration. The alleged infirmity of the proceeding was as evident then as now. If the physical absence of a company representative to assist Iseki's counsel in the preparation and presentation of Iseki's defense actually created the fundamental unfairness Iseki now claims, that effect was surely most acutely evident during the proceedings. The principles of due diligence and waiver remain factors in the analysis whether supplemental discovery should be exceptionally permitted in this context. The impediment, whatever its severity, does not appear from the briefs or on the record before this court to have prevented Iseki from fully and fairly presenting its case to the arbitrator. Absent

that effect, neither public policy nor fundamental due process was compromised.

Iseki identifies no obstacle that prevented it from determining Contex's knowledge before or during the arbitration proceedings about the subject matter of the new discovery it now requests. Moreover, Iseki does not explain how Contex's knowledge of Iseki's alleged legal difficulties, the target inquiry of its proposed discovery, affected in any way the conduct of Iseki's defense by its counsel at the arbitration or the outcome or why it should affect the merits of the award confirmation hearing. Even if the discovery responses from Contex were affirmative of the premises Iseki has articulated, that evidence would not amount to a denial of an opportunity to be heard at a meaningful time and in a meaningful manner on the facts as presented. Iseki has not presented clear evidence of impropriety and is therefore not entitled to conduct additional discovery. *See Woods*, 78 F.3d at 430. Accordingly, in light of the nature of arbitration award confirmation proceedings and in consideration of the due process theory as articulated by Iseki, the discovery requested is not warranted.

## IV. CONCLUSION

For the reasons set forth above, Iseki's request to conduct the discovery identified in its Opening Brief is *DENIED.*

**IT IS SO ORDERED.**