593 A.2d 881

**Mark BAITH and Cindy Baith, Appellees,**

v.

**CNA INSURANCE COMPANIES (NATIONAL FIRE INSURANCE CO. OF HARTFORD), Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 1, 1990.

Filed June 28, 1991.

Robert M. Ruzzi, Philadelphia, for appellant.

John A. Rothschild, Philadelphia, for appellees.

Leonard A. Sloane, Media and James R. Ronca, Harrisburg as amicus curiae for the Pennsylvania Trial Lawyers Association.

Before McEWEN, MONTEMURO and JOHNSON, JJ.

McEWEN, Judge:

■ This appeal presents the question of whether an insurance company may withhold consent to a tortfeasor's offer to settle for "full policy limits", refuse a request of the insured to tender the amount of the settlement offer in order to protect its subrogation rights,[1] and then defend

---

1. This Court, in *Daley–Sand v. West American Insurance Co.*, 387 Pa.Super. 630, 564 A.2d 965 (1989), held that the trial court had

86

against the claim of the insured for underinsured motorist benefits on the ground that breach of a consent to settle clause precludes recovery of underinsured motorist benefits. We conclude that, contrary to the arguments of appellant, the trial court properly determined that appellant's conduct, under the circumstances here presented, violated the public policy of this Commonwealth as expressed in the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §§ 1701–1798, (hereafter MVFRL). We, therefore, affirm the order of the distinguished Judge Robert A. Wright which vacated the award of the arbitrators.

Mark Baith, (hereinafter appellee), while riding a bicycle on October 17, 1985, was struck by an automobile owned and operated by Gavin Stief. Stief was the named insured on a policy of motor vehicle insurance issued by John Hancock Property & Casualty Company which provided $50,000 in liability coverage. Appellee was the named insured on a policy of motor vehicle insurance issued by National Fire Insurance Company of Hartford, a subsidiary of appellant, CNA Insurance Companies which provided $15,000 in underinsured motorist benefits in conformity with the MVFRL.[2]

Appellee instituted suit against Stief seeking damages for the injuries he had sustained in the accident which included a separation and dislocation of his right shoulder that resulted in an open reduction and internal fixation. Stief's insurance carrier, on June 27, 1988, offered the full limit of

properly fashioned an equitable remedy which authorized "Daley–Sand to accept the settlement offer without waiving her UIM coverage ... only if West American refuses to both consent to the settlement or to tender its own draft to Daley–Sand in the amount of the settlement, $50,000 [within thirty days of the order]." *Id.*, 387 Pa.Superior Ct. at 642, 564 A.2d at 972. The insured in the instant case, however, unlike the insured in Daley–Sand, did not institute a separate equity action prior to serving notice upon appellant of his intent to accept the tortfeasor's offer of settlement within forty-five days if appellant did not tender its own draft in the amount of the settlement offer in order to protect its subrogation rights.

2. The MVFRL was amended, effective July 1, 1990, to provide for underinsured motorist coverages to be optional rather than mandatory. *See* Act of February 7, 1990, P.L. 11, No. 6 § 9; 75 Pa.C.S. § 1731.

liability coverage in exchange for a general release. Counsel for appellee, on June 28, 1988, advised appellant of the offer to settle and requested that appellant consent to the settlement. Appellant, by letter dated July 29, 1988, denied appellee's request for its consent to the proposed settlement on the grounds that the value of appellee's personal injury claim did not exceed the tortfeasor's policy limits of $50,-000.[3] Several weeks thereafter, on September 15, 1988, appellant reiterated its refusal to consent, this time on the basis of a company investigation of the assets of the tortfeasor.[4] Appellee, by letter dated September 29, 1988, advised appellant that its refusal to consent to the settlement was unreasonable and in violation of the provisions of the MVFRL. Appellee further advised appellant:

"Nevertheless, if you insist upon your present position then we demand that you resolve this matter by paying the full settlement of this claim. This would include the $50,000 which has been tendered to us by Stief's insurance carrier as well as the underinsured benefits. In return, my client will assign his rights to CNA who can proceed directly against Stief and his insurance carrier. If we do not hear from you within 45 days of the date of this letter, it is our intention to have Mr. Baith convey a

3. The letter of July 29, 1988 provided:
"This will acknowledge receipt of your letter dated July 22, 1988 in which you requested our written consent to settle the above captioned loss.
We have evaluated your client's claim and regret to advise you that we do not feel its value exceeds the policy limit of $50,000 with John Hancock Insurance Company. Due to this, we must deny your client's underinsured motorists claim.
Please be advised that your client cannot execute a release that would prejudice our subrogation rights.
Please contact me if you have any questions."

4. The letter of September 15, 1988, provided:
"This will confirm our conversation of September 13, 1988 in which I advised you we would not waive our subrogation rights in reference to the above-captioned loss. We have completed our assets check regarding Gavin Stief, and we have discovered that he purchased a home in September, 1987 for a price of $145,000. Mr. Stief also has a 1987 Sterling, which is a leased vehicle. He is actively employed and has been so for the last six years. Please contact me if you wish to further discuss this case."

signed general release to Stief's insurance carrier releasing Mr. Stief and to then proceed against CNA for the underinsured motorist benefits...."

Appellant, approximately one month later, on October 24, 1988, responded to this demand by offering its consent to settle *only* if Stief accepted a partial release which would preserve all subrogation rights of appellant against Stief. The following day, appellee's offer of a partial release was rejected by Stief's carrier, which advised appellee that if it did not receive a general release within ten days, it would "file a petition with the court to interplead Mr. Stief's policy, and thereafter we will continue to defend this matter."

The forty-five day period extended to appellant by appellee having expired, appellee, on November 15, 1988, more than *three years* after the accident, forwarded a general release to Stief's insurance carrier in exchange for a draft in the amount of $50,000.

Appellee then proceeded to arbitration of his underinsured motorist claim against appellant CNA. The arbitrators found that appellee Mark Baith had suffered $100,000 in damages as a result of the accident and that he had been 30% causally negligent. The arbitrators further concluded that appellant was entitled to set off the $50,000 paid by John Hancock, and that, as a result, appellee was underinsured by $20,000. The arbitrators did not award appellee the $15,000 in underinsured benefits provided for in his policy, however, since two members of the panel found that appellee's violation of the consent to settle clause had resulted in a forfeiture of his right to recover.[5]

Appellees filed a petition to vacate the arbitrators' award in the Court of Common Pleas of Delaware County. Appellee acknowledged the trial court's limited scope of review in

5. The two arbitrators rejected appellee's argument that the operation of the consent to settle clause violated public policy, an argument based upon the opinion of Judge Samuel M. Lehrer of the Court of Common Pleas of Philadelphia County in Daley–Sand v. West American Insurance Co. The two arbitrators reasoned that Judge Lehrer's decision had not yet been affirmed by the Superior Court.

appeals from statutory arbitration but argued that the operation of the consent to settle clause composed a violation of both public policy and the MVFRL. The eminent trial judge agreed, observing:

The *Daley–Sand v. West American Insurance Co.,* 387 Pa.Super. 630, 564 A.2d 965 (1989) decision was not a decision, as we see it, that merely upheld the right of the victim of an underinsured motorist to compel the substitution of its own underinsured motorist (UIM) carrier's check for that of the tort-feasor's carrier's check if the underinsured motorist carrier did not want to allow the tort-feasor to settle. It held that the UIM carrier could not frustrate the purpose of the Act, to provide full and adequate recovery to the victims of tort-feasors by withholding their consent. They have a choice to consent or to substitute their check. Unless they pick one choice or the other, they frustrate our public policy. To the extent CNA has a contractual clause which frustrates public policy, it is unenforceable.

The plaintiff in *Daley–Sand,* of course, sought equitable and declaratory relief *before* settlement. That is unquestionably a safer and more prudent course, but it does not seem to us that it is a mandatory course. Equity actions are, in large measure, to force persons to act as they are obligated to act. Every UIM claim should not result in a separate equity action, prior to the UIM arbitration, to litigate the reasonableness of the consent to settle or the issue of enforceability of a consent to settle clause. From the standpoint of both judicial economy in avoiding equity actions and fairness in effectuating the public policy of this Commonwealth, there should be no prior determination necessary.

Subrogation is, in most circumstances, an equitable remedy. *Cf. Winfree v. Philadelphia Electric Company,* 520 Pa. 392, 554 A.2d 485 (1989). CNA's position would have required the Baiths to pursue a tort suit against Mr. Stief. They would have to retain counsel, go through the expense of trial, and endure months or possibly years of

delay before the underlying dispute came to an end. Moreover, no matter how strongly Mr. Stief's insurance carrier felt he was going to be found liable in an amount at least equivalent to his policy limits, there has never been a case which cannot be lost, and the Baiths would have had to take that risk. Against this, CNA can only claim that Mr. Stief might have some assets now, which does not guarantee that he would have assets at the time the litigation against him was completed, a judgment was entered, and CNA moved to enforce its subrogated interest in any excess.

By asking us not to set aside the arbitration award, CNA asks us to do equity when it has unclean hands. We are not actually enforcing an equitable remedy, but we are not allowing CNA to rely upon an equitable doctrine which it asserts unfairly and in violation of public policy.

Appellant continues in this appeal to argue that the trial court was without jurisdiction to vacate the award of the arbitrators. We disagree. The insurance policy issued to the Baiths by appellant provided that any dispute concerning entitlement or the amount of damages would be arbitrated in accordance with the Pennsylvania Uniform Arbitration Act, 42 Pa.C.S. §§ 7301 *et seq.* Section 7314 of the Act sets forth the authority of a court to vacate an award entered in accordance with the Act:

**7314. Vacating award by court**

**(a) General rule.—**

(1) On application of a party, the court shall vacate an award where:

(i) the court would vacate the award under section 7341 (relating to common law arbitration) if this subchapter were not applicable;

(ii) there was evident partiality by an arbitrator appointed as a neutral or corruption or misconduct in any of the arbitrators prejudicing the rights of any party;

(iii) the arbitrators exceeded their powers;

(iv) the arbitrators refused to postpone the hearing upon good cause being shown therefor or refused to hear

evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 7307 (relating to hearing before arbitrators), as to prejudice substantially the rights of a party; or

(v) there was no agreement to arbitrate and the issue of the existence of an agreement to arbitrate was not adversely determined in proceedings under section 7304 (relating to court proceedings to compel or stay arbitration) and the applicant-party raised the issue of the existence of an agreement to arbitrate at the hearing.

42 Pa.C.S. § 7314.

"In addition to the reasons set forth in § 7314, § 7314(a)(1)(i) authorizes the court to vacate an arbitration award for reasons permitted under common law arbitration. Under common law arbitration a court may not vacate an arbiters award 'unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award'." 42 Pa.C.S. § 7341.

*Azpell v. Old Republic Insurance Co.*, 526 Pa. 179, 182–183, 584 A.2d 950, 951–52 (1991). *See also: Bateman v. Motorists Mutual Insurance Co.*, 527 Pa. 241, 245, 590 A.2d 281, 283 (1991).

Moreover, " '[t]he law is clear that, although a case turning on the application or construction of an uninsured [or underinsured] motorist clause is within the exclusive jurisdiction of the arbitration system, when the issue is whether a particular provision of the contract is contrary to a constitutional, legislative or administrative mandate, the courts properly exercise their jurisdiction over the entire matter.' " *Kester v. Erie Insurance Exchange*, 399 Pa.Super. 206, 209, 582 A.2d 17, 19 (1990), *quoting Daley–Sand v. West American Insurance Co., supra* 387 Pa.Super. at 637, 564 A.2d at 969. *Accord: Azpell v. Old Republic Insurance Co., supra* 526 Pa. at 183, 584 A.2d at 952; *Davis v. Government Employees Insurance Co.*, 500 Pa. 84, 88, n. 5, 454 A.2d 973, 975 n. 5 (1982); *Sands v. Andino*, 404

Pa.Super. 238, 243, 590 A.2d 761, 763–64 (1991); *Caputo v. Allstate Ins. Co.,* 344 Pa.Super. 1, 2–4, 495 A.2d 959, 960 (1985); *Webb v. United Services Automobile Association,* 227 Pa.Super. 508, 515–17, 323 A.2d 737, 741 (1978).

As we have previously stated, for purposes of appellate review, there is no distinction between a claim that a clause *per se* violates public policy and a claim that the operation of the clause within the contract violates public policy:

> The Motor Vehicle Financial Responsibility Law requires that uninsured and underinsured motorist coverage must be part of every automobile insurance contract. We do not speculate upon general public interest but rather conclude from a clear and unambiguous statute that insurers who do business in this Commonwealth must provide UIM coverage. A court of this Commonwealth may decide that a challenged contractual clause is void as contrary to law. *Insurance Company of North America v. Hippert,* 354 Pa.Super. 333, 511 A.2d 1365 (1986). We may also decide that a clause as applied executes an injustice. *See Wilbert v. Harleysville Mutual Insurance Co.,* [254 Pa.Super. 217, 385 A.2d 987 (1978) ], *supra.* West American justifies withholding consent to settle by elevating its future subrogation rights to primary importance, suggesting that it may take as long as it chooses to research its subrogation opportunities and thus to indefinitely postpone payment of UIM benefits. In so arguing, West American essentially proffers that its subrogation rights are primary over all other rights at issue. We cannot seriously entertain this proposition.
>
> The principle underlying an insurance contract is that the insurer assumes the risk of possible non-recovery from the tortfeasor in return for paid premiums for insurance coverage. When an insurer pays a claim under a policy, it is actually paying the debt of the tortfeasor. The insurer is only secondarily liable; it is the tortfeasor who is primarily liable. Once the insurer has paid a claim to the insured, it may then stand in the shoes of the insured and assert the insured's rights against the tortfeasor.

The right to stand in the insured's shoes and to collect from the tortfeasor once it has paid the insured an amount representing the tortfeasor's debt is called the insurer's right to subrogation.

*Daley–Sand v. West American Insurance Co., supra* 387 Pa.Super. at 636–38, 564 A.2d at 969.

The trial court in the instant case properly entertained the petition to vacate since the issue presented was whether enforcement of a consent to settle clause, where the insured had been offered policy limits and the insurer had refused an opportunity to protect its subrogation rights, violated the public policy of this Commonwealth. *See, e.g.: Kester v. Erie Insurance Exchange, supra* 399 Pa.Super. at 212–13, 582 A.2d at 21. Nor are we persuaded by appellant's argument that appellee was required, under *Daley–Sand*, to institute a separate equity action prior to accepting the offer of settlement of policy limits from the tortfeasor, where appellant had refused an opportunity to protect any right of subrogation it might acquire by payment of underinsured motorists benefits.

The MVFRL expressly provides for subrogation for all payments made by the Assigned Claims Plan or its assignee, 75 Pa.C.S. § 1756, while the Uninsured Motorists Act provided for subrogation for all payments made pursuant to the Uninsured Motorist Act, Act of December 19, 1968, Act. No. 397, § 1, P.L. 1254, 40 P.S. §§ 2000 *et seq.,* repealed in part by the Act of February 12, 1984, P.L. 26, No. 11 § 8(a), insofar as inconsistent with the MVFRL. *See: Davis v. Government Employees Insurance Co., supra* 500 Pa. at 96–97, 454 A.2d at 979. The MVFRL does *not,* however, expressly provide for the subrogation of an insurer for amounts paid pursuant to the underinsured coverages of a policy. Thus, the right of subrogation claimed by appellant is an equitable right which, as recognized by the trial court, is based upon considerations of equity and good conscience. "The right of subrogation may be contractually declared or founded in equity, but even if contractually declared, it is to be regarded as based upon and governed by equitable

principles.... [and] ... equity will not allow the subrogee's claim to be placed ahead of the subrogor's." *Allstate Insurance Co. v. Clarke,* 364 Pa.Super. 196, 201–02, 527 A.2d 1021, 1024 (1987).

As a result of our review of the MVFRL and the decisions of the appellate courts of this Commonwealth, we have no hesitation in concluding that appellant's conduct composed a violation of sound public policy as well as the express provisions and purposes of the MVFRL. We conclude, as well, that appellant's argument, that appellee was required to institute a separate declaratory judgment action prior to insisting upon a *Daley–Sand* compromise with his own insurer, disregards the duty of an insurer to its insured and would impose as well an unreasonable and unnecessary burden on the courts of this Commonwealth.

Order affirmed.