PORTLAND GENERAL ELECTRIC COMPANY, an Oregon corporation, Plaintiff,

v.

U.S. BANK TRUST NATIONAL ASSOCIATION, a Minnesota corporation, Defendant.

No. Civ. 98–1332–HA.

United States District Court, D. Oregon.

Feb. 25, 1999.

David B. Markowitz, Markowitz, Herbold, Glade & Mehlhaf, P.C., Portland, OR, David A. Aamodt, Portland General Electric Company, Portland, OR, for plaintiff Portland General Electric Company.

Phillip Le B. Douglas, Winthrop, Stimson, Putnam & Roberts, New York City, Donald H. Pyle, Lane Powell Spears Luberskey, LLP, Portland, Oregon, Portland, OR, for defendant Trust No. 1.

Thomas V. Dulcich, Scwabe, Williamson & Wyatt, P.C., Portland, OR, for Earl Thorsfeldt, Keith Olds and Commercial Appraisers, Inc.

Stephen L. Griffith, Stoel Rives, LLP, Portland, OR, for Enron Corp.

## AMENDED [1] OPINION AND ORDER

HAGGERTY, District Judge.

### I. Introduction

Pending before the court is Plaintiff Portland General Electric Co.'s ("PGE's")

---

1. The opinion and order dated February 5, 1999 has been amended to correct errata. No substantive changes have been made.

motion for a declaratory judgment against Trust No. 1 of Defendant U.S. Bank Trust National Association ("U.S.Bank") and motion to dismiss Trust No. 1's counterclaims. (Docs. 57 and 71.) PGE seeks a ruling that an appraisal of the value of two generators leased by PGE from Trust No. 1 is binding, while Trust No. 1 seeks to vacate the appraisal, claiming fraud, bias, and other grounds for relief. PGE and certain witnesses sought to be deposed by Trust No. 1 have also filed motions for an order protecting them from discovery. (Docs. 59, 79, and 80.) In light of the limited time constraints imposed by the contract underlying this dispute, the court held expedited argument on the matter. The court stayed discovery with the exception of allowing limited depositions of two appraisers on the narrow issue of their respective roles in rendering the appraisal. The court now makes its full findings and, for the reasons set forth below, shall grant in part the motion for a protective order, grant PGE's motion for declaratory judgment, and dismiss Trust No. 1's counterclaims.

## II. Background

Twenty-five years ago Plaintiff PGE, an electrical company based in Portland, Oregon, leased six generator "units," under two Lease Agreements, from the Bank of California National Association ("Bank of California"). Apparently, the Bank of California held title to the generators through three separate trusts ("Trusts No. 1, 2, and 3"). Through a series of acquisitions and assignments, Defendant U.S. Bank eventually became trustee for all of the trusts.

Both Lease Agreements terminate on August 8, 1999. Under § 24 of both Lease Agreements, PGE has the option to (1) renew them for an additional five-year term at fair market rental value, (2) pur-

chase the units at fair market sales value, or (3) do nothing and let the Leases expire. PGE has until February 7, 1999 to make its decision. Under § 24 of the Lease Agreements, by giving written notice no earlier than one year prior to expiration of the lease, PGE could request those values be determined. If the parties failed to agree upon those values before ten months prior to expiration of the Lease Agreements (October 8, 1998), the Agreements allowed PGE to request an independent appraisal of the value of the equipment. If within 15 business days of the request for appraisal the parties failed to agree on who would be the independent appraiser, either party could request the American Arbitration Association ("AAA") to appoint an independent appraiser.

On October 27, 1998, PGE filed this action asking the Court to appoint an appraiser and instruct that appraiser how to determine the fair market rental value and fair market sales value. On November 13, 1998, the AAA appointed Keith Olds as the independent appraiser of the units owned by Trust No. 1 and sent the parties Olds's biographical information.[2] On November 19, 1998, Trust No. 1 wrote the AAA, complaining about Olds's qualifications and alleged *ex parte* contacts between PGE and Olds. On November 23, 1998, the AAA rejected Trust No. 1's concerns and ruled that Olds's appointment would stand. On December 10, 1998, Olds and his colleague Earl Thorsfeldt issued their valuations that the value of each of Trust No. 1's generators was $4,877,083 fair market sales value and that semi-annual payments on a five-year lease extension would be $580,236.71.

On January 12, 1999, Trust No. 1, unsatisfied with these valuations, filed a series of counterclaims against PGE, running 99 paragraphs in length. In essence, Trust

---

2. The AAA appointed a different appraiser for the equipment owned by Trusts No. 2 and 3. At a hearing on November 24, 1998, this court ruled that under Ninth Circuit case law, *Raytheon Co. v. Rheem Mfg. Co.*, 322 F.2d 173 (9th Cir.1963), as well as the Federal Arbitra-

tion Act ("FAA"), this court had no authority to instruct the appraisers how to determine those values. This court also rejected a motion by PGE challenging the appraisal of the equipment owned by Trusts No. 2 and 3.

No. 1 alleges that Olds relied on false *ex parte* communications from PGE; the appraisal was "80% ghostwritten by PGE"; the appraisal was the product of a secret *ex parte* engagement letter between PGE and Olds; the appraisal was "the result of bad faith, bias, and fraud"; Olds improperly delegated his authority to Thorsfeldt in conducting the appraisal; even if Olds did conduct the appraisal, he was not qualified to appraise the generators because he had no relevant appraisal experience and had been retired for nine years; Thorsfeldt was also not a qualified appraiser; Olds was appointed by the AAA as a result of misrepresentations that he was qualified; PGE informed Olds that his qualifications had been challenged; PGE filed a preemptive suit and sought rulings to "prejudice" Trust No. 1's appraisal rights; Olds had a "sham relationship with Commercial Equipment Appraisers, itself a shell corporation controlled by Thorsfeldt"; the appraisers provided PGE with *ex parte* advance notice that they would use the "in-the-box" premise for fair market value, which was sought by PGE.

Trust No. 1 claims that PGE tampered with the appraisers because it needed to sell the Beaver Facility, including the GE Gas Turbines, prior to the Lease Agreement's expiration on August 8, 1999 in order to make a profit on them. Trust No. 1 claims "PGE developed an aggressive strategy intended to obstruct the fair and orderly appraisal of the GE Gas Turbines and thereby force Trust No. 1 and Trusts No. 2 & 3 into an early sale of the GE Gas Turbines at significant discounts from true market value." (Counterclaims, paragraph 12.)

In support of its counterclaims Trust No. 1 has submitted affidavits from three witnesses as evidentiary support. The affidavit of Phillip Douglas, Trust No. 1's counsel, states that he compared the appraisal and found sentences regarding how market value should be determined were similar to a brief PGE submitted to the court. Trust No. 1 argues from this evidence that the appraisal was "80% ghostwritten" by PGE. Douglas also states in his affidavit that the AAA obtained the reference for Olds by asking Thorsfeldt whom to contact.

Trust No. 1 also submits an affidavit of John Travers who is a member of a firm that specializes in selling power generators. Travers states that he examined national data bases and found that neither Olds nor Thorsfeldt were listed as licensed appraisers or were members of appraisal organizations. Trust No. 1 complains that Olds's most significant job was working for Pacific Power, a PGE competitor, as a construction inspector of high voltage transmissions and substations, and as a marketing manager. Travers also states in his affidavit that when he called Olds, Olds was at a home number, and employees who answered the telephone at Commercial Appraisers, Inc., the company with which Olds affiliated during the appraisal, had not heard of Olds. Trust No. 1 also contends that the appraisal report was not put together well, thus proving that the appraisers were not qualified, and it has submitted an affidavit of John Oates, an appraiser with the New York office of Deloitte & Touche, L.L.P., in support of this contention.

Travers affidavit contains statements about alleged *ex parte* conversations a PGE employee, Joseph Waitman, must have had with Olds, because when they were setting up times to meet, Waitman would indicate that Olds had changed the times or dates. Thus, Travers asserts Waitman had *ex parte* conversations with Olds. At the hearing, Trust No. 1's counsel asserted that the alleged *ex parte* conversations convinced Olds that he had to use the "in the box" valuation method, although there is no objective evidence of this other than the fact that he actually adopted the method in completing his valuation. It is important to note that Trust No. 1's counsel wrote a letter to PGE stating that it would have *ex parte* communications with the appraiser because it believed PGE was doing so. Thus, Trust No. 1 itself engaged in *ex parte* discussions

with Olds. (Reply in Support of Motion for Protective Order/Stay, ex. 1.)

Finally, Trust No. 1 notes that Thorsfeldt signed the appraisal report as the "appointed appraiser" and Olds signed it an "appraisal consultant." According to Trust No. 1, Olds improperly delegated his authority to Thorsfeldt.

Trust No. 1 seeks declaratory relief that the appraisal is void, seeks vacation of the appraisal, and alleges that PGE breached the contractual covenant of good faith and fair dealing, and "aided and abetted" a "tortious breach of good faith an fair dealing" and "breach of fiduciary duty" by the appraisers.

Three sets of motions are before the court: (1) motions by PGE, the Appraisers, and Enron for a protective order or stay of discovery; (2) PGE's motion for a declaratory judgment that the appraisal is binding; and (3) PGE's motion to dismiss Trust No. 1's counterclaims.

## II Discussion

### A. Protective Order/Stay

Trust No. 1 has served the following discovery requests on PGE: (1) a request for production of documents, with 46 separate requests; (2) subpoenas seeking two days of deposition each of Olds and Thorsfeldt; (3) deposition of William Mehlhaf, counsel for PGE; and (4) FRCP 30(b)(6) corporate deposition notices on Enron, Commercial Equipment Appraisers, and the records custodian at the Markowitz, Herbold law firm, PGE's counsel. Trust No. 1 seeks all documents related to the appraiser's high school education, all document relating to any appraisal to Commercial Equipment Appraisers has conducted since 1989, all documents dating from 1973 forward relating to PGE's negotiation of the Lease Agreement, all documents relating to any appraisal referring to the "con-

tinued use" or "in the box" fair market formula, "all documents relating to Enron/PGE's decision to sell the Beaver Facility and resell the turbine generators, and all documents relating to PGE's decision to initiate this lawsuit." PGE, Olds, Thorsfeldt, and Enron challenge the propriety of these requests.

### 1. Applicable Law

█ Because Trust No. 1 wishes to avert the strict rules for obtaining discovery in an action to overturn an arbitral decision under the Federal Arbitration Act ("FAA"), it argues that the FAA does not apply to the appraisal of its turbine generators. This argument fails for several reasons. First, in *Raytheon Co. v. Rheem Mfg. Co.*, 322 F.2d 173 (9th Cir.1963), the Ninth Circuit applied the FAA to an appraisal of machinery and clearly equated a contractually mandated appraisal with an arbitration subject to the FAA. Second, by its terms the FAA applies to "a written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ..." 9 U.S.C. § 2. The Lease Agreements by providing for the appraisal procedure and referring their dispute to the American Arbitration Association fall directly with the statutory description of cases subject to the FAA. Third, at the November 24, 1998 hearing Trust No. 1 argued in no uncertain terms that the FAA applied, and this court agreed by ruling that *Raytheon* controlled this dispute. Having urged this court to apply the FAA, Trust No. 1 must live with the results.[3]

In its brief Trust No. 1 also asserts that even if the FAA applies to the appraisal agreement as a general matter, it cannot be applied under these circumstances because the arbitrator was not independent

---

**3.** Trust No. 1 argues that PGE cannot challenge the subpoenas Trust No. 1 issued on the appraisers because it has no standing. First, FRCP 26(c) states, "Upon motion *by a party* or by the person from whom discovery is sought," the court may issue a protective or-

der limiting discovery. As PGE is a party, the rule expressly gives it standing. Second, because the appraisers have now filed their own motions to quash the subpoenas, this objection is moot.

or qualified. It contends that because Olds was allegedly not independent and not qualified to appraise the turbine generators, it did not receive a qualified, independent appraisal, and thus, it equates the appraisal as being "beyond the scope of the FAA" and declares that it "is a legal nullity beyond the pale of the FAA." (Brief in Opposition to a Protective Order/Stay.) The cases Trust No. 1 cites do not support its contention.

In *Western Employers Ins. Co. v. Jefferies & Co.,* 958 F.2d 258, 261–62 (9th Cir. 1992), the Ninth Circuit vacated an arbitral award because the contract required the arbitrators to provide written conclusions of law and fact, but the arbitrators failed to do so. The Ninth Circuit did not remotely suggest that the FAA did not apply. To the contrary, the court expressly relied on the FAA to vacate the award because it did not comply with the contract, finding "arbitrators can exceed their powers under 9 U.S.C. § 10(d) when they fail to meet their obligations, as specified in a given contract, to the parties." *Id.* Likewise, in *Szuts v. Dean Witter Reynolds, Inc.,* 931 F.2d 830 (11th Cir.1991), cited by Trust No. 1, the Eleventh Circuit vacated an award rendered by two arbitrators, when the contract specifically required that three arbitrators make the decision. The Court of Appeals relied on the FAA in finding that the award was invalid because it did not comply with the contract and did not so much as hint that the FAA did not apply.

■ Trust No. 1 cannot avoid limited discovery under the FAA by arguing that because the appraisal was allegedly conducted by an unqualified, non-independent appraiser, the FAA does not apply. The FAA was enacted to make arbitration decisions binding and enforceable and limit how parties may challenge them. *Volt Information Sciences v. Board of Trustees of Leland Stanford Junior Univ.* 489 U.S. 468, 474, 109 S.Ct. 1248, 1253, 103 L.Ed.2d 488 (1989). Consequently, Trust No. 1 cannot escape the FAA by arguing that because it has challenged the award the FAA does not apply. This reasoning is circular and contradicts the very reason the FAA was enacted. Rather, Trust No. 1's contentions must be examined within the framework the FAA sets forth.

Next, Trust No. 1 contends the court must apply Oregon law, as the choice-of-law clause in the Lease Agreements provide, rather than the body of federal law that has developed under the FAA. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983) (§ 2 of the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any agreement within the coverage of the Act"). This argument does find some support in *Volt,* 489 U.S. at 476, 109 S.Ct. at 1254, which held that a choice-of-law provision incorporates procedural arbitration rules of the referenced state. While it is uncertain whether *Volt* also requires this court to apply state-court decisions on the issue of how much discovery a party is entitled to when it challenges in federal court an arbitral decision under the FAA after that decision has been made, that issue need not be decided here because Oregon law does not contradict a federal decision on discovery issues.

Trust No. 1 cites *Contractors, Inc. v. Form–Eze Systems, Inc.,* 68 Or.App. 124, 681 P.2d 148 (1984), for the proposition that the current majority rule allows for arbitrators to be deposed "when there is an objective basis for some reasonable belief that fraud or misconduct occurred on the part of the arbitrators." (Brief in Opposition of Protective Order/Stay.) This account of *Contractors* is incorrect. The quoted language derives from what the plaintiff in *Contractors* argued the court should adopt as a rule, not what the court said its rule, or even the majority rule, was. The court found that it need not decide whether to adopt the plaintiff's formulation because the plaintiff could not show objective evidence that would even meet its own standard. *Id.* Thus, Oregon has not provided a different standard for

obtaining discovery than that developed by the federal courts interpreting the FAA.[4] The court therefore shall look to decisions of the Ninth Circuit and other federal courts to determine the issue.

## 2. Scope of Discovery When Seeking to Vacate an Arbitral Award

■ Section 10 of the FAA allows a court to vacate an arbitral award only in the following narrow circumstances: (a) where the award was procured by corruption, fraud, or undue means; (b) where there was evident partiality or corruption of the arbitrators; (c) where the arbitrators were guilty of misbehavior by which the rights of any party have been prejudiced; or (d) where the arbitrators exceeded their powers, or so imperfectly executed them that a "mutual, final, and definite award" was not made. 9 U.S.C. § 10. "Courts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *United Paperworkers v. Misco*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). "When arbitrators explain their conclusions .. in terms that offer even a barely colorable justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result." *Andros Compania Maritima v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir.1978) (cited with favor in *Woods v. Saturn Distribution Corp.*, 78 F.3d 424, 430 (9th Cir.1996)).

Discovery in the challenge of an award is very limited. In *Woods*, the Ninth Circuit stated, "The Federal Rules of Civil Procedure do not apply to 'post hoc' questioning of arbitrators in Title 9[FAA] proceedings and 'any questioning of arbitrators should be handled pursuant to judicial supervision and limited to situations where *clear evidence of impropriety* has been presented,' " 78 F.3d at 430 (quoting *Andros*, 579 F.2d at 702) (emphasis added). In *Woods*, the Ninth Circuit ruled that the district court did not abuse its discretion when it refused to allow a party to depose an arbitrator. "Although it may be difficult to prove actual bias without deposing the arbitrators, depositions of arbitrators are 'repeatedly condemned' by courts.' " *Id.* (quoting *O.R. Securities, Inc. v. Professional Planning Assoc.*, 857 F.2d 742, 748 (11th Cir.1988)). *See also Legion Insurance Co. v. Insurance General Agency*, 822 F.2d 541, 543 (5th Cir.1987) ("Courts have repeatedly condemned efforts to depose members of an arbitration panel to impeach or clarify their awards."). Without presentation of clear evidence of impropriety, discovery is not permitted. *Woods*, 78 F.3d at 430.

In *Andros*, the Second Circuit upheld a district court's refusal to allow discovery of the details of an arbitrator's relationship with a party, where the arbitrator had no direct personal stake in the arbitration but had a professional relationship with the party. The arbitrator had served in the past as an arbitrator with one of the parties. The court found it was "a classic example of a losing party seizing upon a pretext for invalidating the arbitration award." 579 F.2d at 702. The plaintiff's allegation were insufficient to show bias or obtain discovery on the issue.

**4.** The only other Oregon authority Trust No. 1 cites is no longer good law. In *Oregon–Washington R. & Nav. Co. v. Spokane, P & S. Ry.*, 83 Or. 528, 163 P. 600 (1917), the Oregon Supreme Court contemplated, without deciding, whether arbitrators could be forced to testify about their awards. This case, from 1917, did not survive passage of the FAA. The FAA was enacted to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20, 105 S.Ct. 1238, 1241–43, 84 L.Ed.2d 158 (1985).

Trust No. 1 also relies on a North Carolina case for its "objective evidence of a reasonable basis" standard. *Carolina–Virginia Fashion Exhibitors, Inc. v. Gunter*, 291 N.C. 208, 230 S.E.2d 380 (1976). Obviously, the choice-of-law provision refers to Oregon law, not North Carolina law, and the decisions of the Ninth Circuit are much more authoritative for this court, even when they are arguably not binding.

In *O.R. Securities,* the Eleventh Circuit noted that the moving party has the burden of setting forth sufficient grounds to vacate the award in its moving papers. The rules of notice pleading do not apply to arbitration awards. 857 F.2d at 748. Fraud must be shown by clear and convincing evidence, and that fraud "must not have been discoverable upon the exercise of due diligence prior to or during the arbitration." *Id.* The Ninth Circuit in *Woods* cited *O.R. Securities,* for the proposition that the "district court did not abuse [its] discretion in not permitting further discovery when [the] issue of fraud was discoverable during arbitration." 78 F.3d at 430.

In light of the odd manner in which Thorsfeldt and Olds signed the appraisal, in an order dated January 29, 1999, the court allowed discovery on the limited issue of their roles in conducting the appraisal. The court stayed all other discovery and now decides that such discovery would be inappropriate under the circumstances.

■ Trust No. 1's "evidence" of fraud is virtually non-existent. At most, it can show that Olds had *ex parte* conversations with PGE employees, but Trust 1 also engaged in *ex parte* conversations of its own. A November 16, 1998 letter from Mr. Douglas, Trust No. 1's lead counsel, to William Mehlhaf of the Markowitz firm reads as follows:

> I am informed by our client that, in an effort to get the appraisal underway John Travers suggested to Joseph Waitman of Portland General on November 13, 1998 that they jointly contact the Appraiser appointed by AAA. Mr. Waitman declined to do so under instructions from Portland General's lawyers. *Accordingly, please be advised that our client will proceed to contact the Appraiser independently.*

(PGE's Reply, ex. 1) (emphasis added). Obviously, it would fly in the face of fairness to allow full-fledged discovery on this issue simply because PGE engaged in activities in which Trust No. 1 also engaged.

■ The only evidence of "ghostwriting" Trust No. 1 has presented is language that appears similar to a brief PGE submitted to the court on the issue of what formula should be used to value the equipment. On the other hand, the appraisers quite clearly could have examined the party's brief when deciding what formula to use, and the appraiser's deposition testimony supports this view. (*See* Depositions of Olds at 34:15–17 and Thorsfeldt at 34:1–4.) Thus, the "ghost writing" claim is speculative. While Trust No. 1 claims that from the start Olds was biased in favor of PGE, there is no evidence he had any stake in the appraisal. No discovery can be had where all that exists is a claim of bias based upon a former professional relationship between the parties. *Andros,* 579 F.2d at 702. Further, while Trust No. 1 requests documents relating to appraisers qualifications, these documents, such as past history of the appraisers and their past appraisals, were all items Trust No. 1 could have sought and obtained before it received an adverse decision. Thus, they are not discoverable at this late stage of the proceedings. *O.R. Securities,* 857 F.2d at 748.

As for the depositions of appraisers Olds and Thorsfeldt and the Rule 30(b)(6) notice on Commercial Appraisers Inc., there has been no showing that the appraisers committed fraud. The most persuasive evidence Trust No. 1 can muster is the statement of a PGE employee that PGE had submitted a lower offer because of a "different appraiser," potentially suggesting that PGE knew of the appraiser's valuation before it was rendered. As that statement was made during compromise negotiations after these proceedings had commenced, however, it is inadmissable. FRCP 408 ("statements made in compromise negotiations" are inadmissable). In light of the comments in *Woods* that depositions of appraisers are something to be "condemned," depositions beyond those already allowed would be inappropriate here.

■ With respect to the requested deposition of William Mehlhaf, counsel for PGE from the Markowitz firm, and the records custodian at the Markowitz firm, an attorney for a party may be deposed only where: (1) no other means exists to obtain the information, (2) the information is relevant and not privileged; and (3) the information is crucial to preparation of the case. *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir.1986) (the leading case on deposing attorneys); *see, e.g., Massachusetts Mutual Life Ins. Co. v. Cerf,* 177 F.R.D. 472, 478 (N.D.Cal.1998) (adopting the *Shelton* formulation). Even apart from the showing needed to obtain discovery in challenging an arbitral award, Trust No. 1 makes *no showing of what* information it would obtain from Mehlhaf and the firms documents custodian, let alone how it is not subject to the attorney-client privilege, and how it cannot gain the information from other sources.

■ As the *Woods* case makes clear, discovery in the challenge of an arbitral award is tightly circumscribed and available only upon "clear evidence of impropriety." 78 F.3d at 430. Apart from the delegation issue, such evidence has not been presented, and to allow additional discovery would permit Trust No. 1 to commence upon an impermissible fishing expedition. The protective order shall be granted precluding further discovery.

### B. PGE's Motion to Dismiss Counterclaims and For a Declaratory Judgment

"Because a primary purpose behind arbitration agreements is to avoid the expense and delay of court proceedings, it is well settled that the judicial review of an arbitration award is very narrowly limited[.]" *Foster v. Turley,* 808 F.2d 38, 42 (10th Cir.1986). The only grounds for challenging results of an arbitration under the FAA are provided in 9 U.S.C. § 10. The FAA allows a court to vacate an arbitral award only: (a) where the award was procured by corruption, fraud, or undue means; (b) where there was evident partiality or corruption of the arbitrators; (c) where the arbitrators were guilty of misbehavior by which the rights of any party have been prejudiced; or (d) where the arbitrators exceeded their powers, or so imperfectly executed them that a "mutual, final, and definite award" was not made. 9 U.S.C. § 10. "The scope of review is limited to these provisions," and there is "no other avenue by which an arbitration award may be challenged." *Corey v. New York Stock Exchange,* 691 F.2d 1205, 1212 (6th Cir.1982).

■ Trust No. 1 requests this court to rule that PGE cannot exercise its options to purchase or relet the Units and it seeks damages for breach of contract, breach of good faith and fair dealing, and aiding and abetting the appraisers in breaching their fiduciary duty toward Trust No. 1. (*See* Trust No. 1's Counterclaims.) These claims cannot stand. The only power the court has over this dispute is to vacate the award and remand it to a new set of appraisers. *Foster,* 808 F.2d at 42–43. A party cannot launch a collateral attack on the decision by raising other legal claims. *Sander v. Weyerhaeuser Co.,* 966 F.2d 501 (9th Cir.1992) (action alleging fraud under securities laws was an impermissible collateral attack on an arbitral award); *Corey,* 691 F.2d at 1213 (same). Moreover, the charges that PGE aided and abetted the appraisers in improper conduct do not state a cause of action. *See Tamari v. Conrad,* 552 F.2d 778 (7th Cir. 1977) (arbitrators cannot be sued as a result of their awards) (citing cases). The FAA provides the exclusive remedy for challenging an appraisal, and the award is presumed valid unless one of those grounds is affirmatively shown to exist. *Wall Street Associates v. Becker Paribas, Inc.,* 27 F.3d 845, 848 (2d Cir.1994). Thus, Trust No. 1's claims for damages under different contract or tort theories and the claim for a declaration that "PGE has forfeited its rights both to invoke Appraisal Procedure and to exercise any option under the Lease Agreement," (Counterclaims, requested relief), must be dis-

missed. In addition, Trust No. 1's claim that PGE instituted this litigation to disrupt the proceedings is obviously not a ground for vacating an award under the FAA and likewise must be dismissed.

■ Trust No. 1's counterclaims, in all their 99 paragraphs, do not even mention the FAA or its Oregon equivalent, but they do request that the award be vacated. Liberally construing the allegations of fraud and misconduct, they may state grounds for vacating the appraisal under the FAA; however, the rules of notice pleading do not apply where a party seeks to vacate an arbitral award. *O.R. Securities, Inc. v. Professional Planning Assoc.,* 857 F.2d 742, 748 (11th Cir.1988). Thus, Trust No. 1 has the burden of setting forth is its·moving papers sufficient grounds to vacate the award. *Id.* In order to determine whether grounds for vacating the appraisal exist, the court shall consider the affidavits and the results of the limited depositions and discovery regarding delegation of authority from Olds to Thorsfeldt.

■ As noted above, in general the affidavits do not support Trust No. 1's contentions. With respect to the alleged *ex parte* contacts between PGE and the appraiser, Trust No. 1 engaged in *ex parte* contacts itself. In fact, Trust No. 1 admits in its counterclaims that Travers met independently with Olds and Thorsfeldt and that Travers argued for the "continued use" valuation method, rather than the "in the box" method. (*See* Counterclaims, ¶¶ 52–54.) Consequently, Trust No. 1 suffers from unclean hands, and it would be inequitable to vacate the award on that ground. *Cf. Baith v. CNA Ins. Co.,* 406 Pa.Super. 84, 593 A.2d 881 (1991) (applying "unclean hands" doctrine in context of arbitral vacation proceedings). Moreover,

since Trust No. 1 was able to argue *ex parte* for its method of valuation, it was not prejudiced by PGE's doing so. *See* 9 U.S.C. § 10 (requiring arbitral misconduct to have prejudiced a party).

■ While Trust No. 1 challenged Olds's qualification before the AAA, there appears to be no evidence in the record that Trust No. 1 challenged Thorsfeldt's qualification to the extent he aided Olds, even though Trust No. 1's counterclaims make clear that it knew of his involvement in the appraisal. (*See* Counterclaims, ¶¶ 52–54.) In *Marino v. Writers Guild of America,* 992 F.2d 1480 (9th Cir.1993), the Ninth Circuit stated, "[I]t is well settled that a party may not sit idle through an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse." Here, Trust No. 1 knew that Thorsfeldt had significant involvement with the appraisal process, but it did not complain until it received a decision it did not like. Under *Marino,* this failure to object amounted to a waiver, and it cannot now complain of something it could have challenged before it received an adverse decision.[5] *Id.*

■ Trust No. 1's challenge to Olds's qualifications also fails. Qualifications are viewed in light of the contract's arbitration clause. *See Avis Rent A Car v. Garage Employees Union,* 791 F.2d 22 (2d Cir. 1986). Here, the arbitration clause provides no specific qualifications that the appraiser must have had. Instead, it merely states that the AAA will choose a qualified appraiser if the parties cannot agree. Although Olds's qualifications might not be overwhelming, he appears to have significant experience with generators during the course of his lengthy employment with

---

5. PGE also argues that Trust No. 1, even though it did challenge Olds's qualifications before the AAA, could have then come to this court with its challenge. Several cases hold, however, that district courts (as opposed to arbitration organizations such as the AAA) are not to entertain challenges to an arbitrator's qualifications *before* an award is rendered.

*See, e.g., Florasynth v. Pickholz,* 750 F.2d 171 (2d Cir.1984) (noting that allowing premature challenges in this court would disrupt the arbitral process). Thus, Trust No. 1 did not have the option of challenging in this court Olds's qualifications before the award was rendered.

Pacific Power. As the contract appoints the AAA as the entity charged with choosing who the appraiser would be, it was, in effect, the arbitrator of that portion of the dispute. Thus, as the AAA's resolution was in itself an arbitral decision, its choice of an appraiser is entitled to a great degree of deference. *Rostad & Rostad, Inc. v. Investment Manag. & Research, Inc.,* 923 F.2d 694, 697 (9th Cir.1991) ("Deference to arbitrators is the rule."). The parties bargained to have the AAA choose the arbitrator, and that is what they received. The AAA is in the best position to examine the potential candidates and make what it deems to be an appropriate selection, and absent a patently absurd choice, this court has no authority to disturb the AAA's selection. *See id.*

◼ Next, Trust No. 1 complains that PGE paid Olds approximately $24,000 to perform the appraisal, apparently implying that this biased his decision. This argument is without merit as § 24(c) of the Lease Agreements specifically requires PGE as the lessee to "pay all costs and expense of any appraisal[.]" If Trust No. 1 was worried about the potential bias that might arise from payment by PGE, it should have bargained to split any such costs when the Lease Agreements were drafted, rather than agreeing that PGE would bear all of the costs.

◼ Trust No. 1 also argues that Olds and Thorsfeldt mistakenly believed that they had to apply the "in the box" method of valuation under Oregon law and, thus, the appraisal was invalid. Judicial review under this standard is "extremely limited." *Sacks v. Richardson Greenshield Sec., Inc.,* 781 F.Supp. 1475, 1484 (E.D.Cal.1991) "Courts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *United Paperworkers v. Misco,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Absent fraud or other misconduct, an arbitrator's decision may be overturned only if its was the result of "a manifest disregard for the law." *Rostad & Rostad v. Investment Management & Research, Inc.,* 923 F.2d 694, 697 (9th Cir.1991). "Although the bounds of this ground have never been defined, it clearly means more than error or misunderstanding with respect to the law." *Merrill Lynch, Pierce, Fenner & Smith v. Bobker,* 808 F.2d 930, 933 (2nd Cir.1986). "The error must have been obvious and capable of being readily and instantly perceived[.]" *Id.* "Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." *Id.; Sacks,* 781 F.Supp. at 1484. Here, while the appraiser may have been mistaken as to what Oregon law requires, there is no evidence that he engaged in the sort of wholesale, conscious disregard this standard requires. As such, Trust No. 1 cannot win on this claim.

◼ Finally, Trust No. 1 argues that Olds improperly delegated his authority to Thorsfeldt, pointing to a "Joint Venture Agreement" in which Olds agreed to split his appraisal fees and expenses with Thorsfeldt. Trust No. 1 also notes that Thorsfeldt signed the appraisal report as the "appointed appraiser" and Olds signed it an "appraisal consultant." In their depositions, however, Olds and Thorsfeldt both testified that Olds acted as the head appraiser and completed most of the work, although Thorsfeldt was substantially involved in the process. Olds affiliated himself with Commercial Equipment Appraisers, Inc. because although Olds had substantial experience with turbine generators, he was not familiar with formal appraisal procedures. (Olds Dep. at 35.) Thorsfeldt was able to provide his expertise to aid Olds in performing the appraisal, and it is only proper that Olds compensate Thorsfeldt for his services. Olds signed the appraisal as an "associate consultant" to indicate the basis on which he was affiliated with Commercial Equipment Appraisers. Both Olds and Thorsfeldt testified, however, that Olds was chiefly responsible for the appraisal. (Thorsfeldt Dep. at 6 and 15.) The court finds that in

the context of an appraisal, acquiring knowledge by consulting other knowledgeable appraisers is not an improper delegation of authority.[6] *See New Haven Savings Bank v. Valley Inv.*, 174 Conn. 77, 384 A.2d 321 (1977) (rejecting a motion to vacate an appraisal where the appraiser consulted an outside appraiser and paid him a consultation fee). Furthermore, as noted above, Trust No. 1 knew that Thorsfeldt was substantially involved in the appraisal process, but it failed to raise before the AAA a challenge to Thorsfeldt's assistance before the appraisal was completed. *Marino v. Writers Guild of America*, 992 F.2d 1480 (9th Cir.1993) ("[I]t is well settled that a party may not sit idle through an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse.")

**THEREFORE, IT IS HEREBY ORDERED:**

1. The motions for a protective order, (docs. 59, 79, and 80), are granted with respect to any additional discovery;

2. PGE's motion for a declaratory judgment against Trust No. 1, (doc. 57), is granted and the appraisal of Trust No. 1's generators is ruled to be binding.

3. PGE's motion to dismiss Trust No. 1's counterclaims, (doc. 71), is granted.

4. Trust No. 1's request for further argument, (doc. 89), is denied.

---

**6.** While it is generally improper for an arbitrator to consult outside sources, appraisers are generally required to do so in carrying out their duties. Thus, the cases Trust No. 1 cites in its brief are distinguishable. Here, Olds sought assistance in rendering an appraisal, rather than a wholesale delegation of the authority to make an arbitral award. An appraiser may engage outside assistance while still remaining independent. *New Haven Savings Bank*, 384 A.2d at 323.